# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 25, 2013

No. 11-10535

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellant

v.

HOLY LAND FOUNDATION FOR RELIEF AND DEVELOPMENT, also known as HLF; SHUKRI ABU BAKER; GHASSAN ELASHI; MUFID ABDULQADER; ABDULRAHMAN ODEH,

Defendants - Appellees

JENNY RUBIN; DEBORAH RUBIN; DANIEL MILLER; ABRAHAM MENDELSON; STUART E. HERSCH; RENAY FRYM; NOAM ROZENMAN; ELENA ROZENMAN; TZVI ROZENMAN,

Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, CLEMENT, and PRADO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Appellees ("the Rubins") are victims of a terrorist attack perpetrated by the terrorist group Hamas in 1997 at an outdoor pedestrian mall in Jerusalem. Appellee the Holy Land Foundation ("HLF") is a designated terrorist organization that the Department of the Treasury has found to act for or on

No. 11-10535

behalf of Hamas by serving as its fundraising arm in the United States. After obtaining a judgment against Hamas in the district court for damages resulting from the attack, the Rubins requested that the court issue a Writ of Garnishment against the assets of Hamas and HLF. Although the court issued the writ, the Rubins could not execute against HLF's assets because those assets previously had been restrained under 21 U.S.C. § 853 to preserve their availability for criminal forfeiture proceedings. The Rubins filed a third-party petition under § 853(n) to assert their interests in the restrained assets and, in response, the government filed a motion to dismiss. The district court denied the government's motion to dismiss the Rubins' petition and vacated the preliminary order of forfeiture, holding that the Terrorism Risk Insurance Act of 2002 ("TRIA") allows the Rubins to execute against HLF's assets notwithstanding the government's forfeiture proceedings. The government appealed and we REVERSE, holding that the Rubins cannot recover under either 21 U.S.C. § 853 or the TRIA.

## I.  FACTUAL BACKGROUND

### A.  *The Rubins' proceedings against Hamas*

The Rubins are nine American citizens who suffered severe harm as a result of a triple suicide bombing carried out by the terrorist group Hamas on September 4, 1997 at an outdoor pedestrian mall in Jerusalem, Israel. In May 2002, the Rubins brought a lawsuit against Hamas under the civil remedies provisions of the Anti-Terrorism Act of 2001, 18 U.S.C. § 2333, and in 2004 they won a judgment in their favor for $214.5 million. *Rubin v. Hamas-Islamic Resistance Movement*, No. Civ. A. 02–0975(RMU), 2004 WL 2216489, at *3–4 (D.D.C. Sept. 27, 2004). Subsequently, the Rubins registered their judgment in the Southern District of New York, Western District of Washington, District of New Jersey, District of South Carolina, and Northern District of Illinois. The

2

No. 11-10535

Rubins then requested that the Western District of Washington issue a Writ of Garnishment against Saturna Capital, which was holding funds belonging to HLF.

### B. Federal proceedings against HLF

On December 4, 2001, shortly before the Rubins' trial, the Secretary of the Treasury determined that HLF "acts for or on behalf of" Hamas and designated HLF a "Specially Designated Terrorist" under Executive Order 12947 and a "Specially Designated Global Terrorist" under Executive Order 13224.[1] *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 64 (D.D.C. 2002). More specifically, the Treasury Secretary found that HLF functions as the fundraising arm of Hamas in the United States, and, pursuant to the authority granted to him by the Executive Orders, instructed the Office of Foreign Assets Control ("OFAC") to "block" all of HLF's funds, accounts, and other property. *Id.*

Following HLF's designation as a terrorist group and the blocking of its assets, the U.S. government initiated a criminal investigation into HLF's activities in the United States. On July 26, 2004, before the Rubins obtained their civil judgment, the government filed a forty-two count indictment against HLF in the Northern District of Texas, which informed HLF of the government's intent to seek forfeiture of "all property, real and personal, involved in the [alleged] money laundering or monetary transaction offenses, and all property traceable to such property." In accordance with this indictment, on September 23, 2004, OFAC issued a license authorizing the government to pursue criminal forfeiture of HLF's assets which had been blocked by Executive Orders 12947 and 13224. OFAC issued this license four days before the district court entered

---

[1] Hamas had already been designated a "Specially Designated Terrorist" by President Clinton on January 23, 1995, *see* Executive Order 12947 (issued pursuant to the authority granted to the President under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.*), and a "Specially Designated Global Terrorist" by President Bush on September 23, 2001, *see* Executive Order 13224. By virtue of these designations, Hamas's and HLF's assets were "blocked."

a civil judgment in favor of the Rubins against Hamas on September 27, 2004. The government then filed, and the district court granted, an "Ex parte Application for Post-Indictment Restraining Order" against HLF's assets. *See* 21 U.S.C. § 853(e)(1)(A).[2]

Several years later, on November 24, 2008, a federal jury found HLF guilty of various terrorism-related crimes, tax-related crimes, conspiracy to commit money laundering, and substantive money laundering offenses. The jury also returned a special verdict determining that $12.4 million in HLF assets was derived from proceeds traceable to the commission of the money laundering offenses.

On February 5, 2009, the district court entered a preliminary order of forfeiture against HLF's assets under 18 U.S.C. § 982(a)(1).[3] Pursuant to this order, the government was awarded a $12.4 million judgment, the funds in HLF's bank accounts were deemed forfeited to the government, and the government was granted authorization to seize HLF's assets. Third parties with judgments against Hamas, including the Rubins, could only assert their alleged interests in the forfeited assets by filing ancillary petitions under 21 U.S.C. § 853(n). The Rubins filed such a petition, conceding that they could not satisfy the requirements for prevailing as a third-party creditor under § 853(n), but nonetheless maintaining that they were entitled to enforce their prior civil

---

[2] This statutory provision provides that, "[u]pon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property [subject to criminal forfeiture]—(A) upon the filing of an indictment or information charging a violation . . . for which criminal forfeiture may be ordered under this section and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section." 21 U.S.C. § 853(e)(1).

[3] Upon a party's conviction for certain money laundering offenses, 18 U.S.C. § 982(a)(1) directs the court to order the guilty party to "forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." The forfeiture of property under this section is governed by 21 U.S.C. § 853, which provides that "[a]ll right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section," *id.* at § 853(c).

4

judgment against HLF's assets under § 201 of the TRIA.[4]  The government moved to dismiss the Rubins' petition on the ground that they could not satisfy the statutory requirements for prevailing in the ancillary proceeding under 21 U.S.C. § 853(n)—the only means by which the Rubins could assert their interest in HLF's forfeited assets.

On April 27, 2011, the district court denied the government's motion to dismiss the Rubins' petition, and also vacated the preliminary order of forfeiture that had been granted to the government after HLF's conviction.  The court concluded that, under the TRIA, "[HLF's] assets are subject to attachment by plaintiffs with judgments 'notwithstanding any other provision of law,' such as criminal forfeiture law." *United States v. Holy Land Found. for Relief & Dev.*, No. 3:04–CR–0240–P, 2011 WL 3703333, at *6 (N.D. Tex. Aug. 19, 2011).  The court subsequently amended its Memorandum Opinion and Order to state that the preliminary order of forfeiture would reflect this holding.  The government timely appealed, and the district court stayed its order pending the outcome of the appeal.

## II.  STANDARD OF REVIEW

We review de novo a district court's legal conclusions regarding jurisdiction.  *Filer v. Donley*, 690 F.3d 643, 646 (5th Cir. 2012).  In evaluating a

---

[4]  The relevant provision of the TRIA states that:

> Notwithstanding any other provision of law . . . any property with respect to which financial transactions are prohibited or regulated pursuant to section 5(b) of the Trading with the Enemy Act (50 U.S.C. App. 5(b)), section 620(a) of the Foreign Assistance Act of 1961 (22 U.S.C. 2370(a)), sections 202 and 203 of the International Emergency Economic Powers Act (50 U.S.C. 1701-1702), or any other proclamation, order, regulation, or license issued pursuant thereto, shall be subject to execution or attachment in aid of execution of any judgment relating to a claim for which a foreign state (including any agency or instrumentality or such state) claiming such property is not immune[.]

Pub. L. No. 107–297, 116 Stat. 2322.

No. 11-10535

district court's disposition of a petition filed under 21 U.S.C. § 853(n), we review factual findings for clear error and legal conclusions de novo. *United States v. Ramunno*, 599 F.3d 1269, 1273 (11th Cir. 2010); *United States v. Nava*, 404 F.3d 1119, 1127 n.3 (9th Cir. 2005). Additionally, we review de novo a district court's interpretation and application of TRIA § 201 and 21 U.S.C. § 853. *See United States v. Gore*, 636 F.3d 728, 730 (5th Cir. 2011) (reviewing "de novo the district court's interpretation and application of a statute").

## III.  ANALYSIS

*A.  Jurisdiction to hear the appeal*

On April 27, 2011, the district court issued a Memorandum Opinion and Order denying the government's motion to dismiss the Rubins' third-party ancillary petition under 21 U.S.C. § 853(n). In that Order, the court also vacated the preliminary order of forfeiture that it had previously entered after HLF's criminal conviction. The government, recognizing that § 853(n)(6) requires a court to amend a preliminary order rather than vacate it, moved for an amendment of the Memorandum Opinion and Order to show that the preliminary order was amended rather than vacated. On May 26, 2011, prior to the district court's ruling on the motion to amend, the government filed a notice of appeal from the original Memorandum Opinion and Order. On August 19, 2011, the district court granted the government's motion to amend and stated that the preliminary order of forfeiture would be amended rather than vacated. The resulting Amended Memorandum Opinion and Order is identical to the original order except for the final sentence, which states that "the court will amend its Preliminary Order of Forfeiture" rather than "[t]he court hereby VACATES the Preliminary Order of Forfeiture."

The Rubins argue that we lack jurisdiction over the instant appeal since the government failed to file a new or amended notice of appeal after the district

6

court granted its Rule 59(b) motion to amend the Memorandum Opinion and Order. The Rubins base their argument on Federal Rule of Appellate Procedure 4(a)(4)(B)(ii), which requires a party "intending to challenge an order disposing of [a motion to amend under Federal Rule of Civil Procedure 59(b)] or a judgment's alteration or amendment upon such a motion [to] file a notice of appeal, or an amended notice of appeal." FED. R. APP. P. 4(a)(4)(B)(ii). The Rubins' argument fails because the government never sought to: (1) challenge the court's ruling on its Rule 59(b) motion to amend, which in fact was decided in the government's favor, or (2) challenge the court's alteration of its Memorandum Opinion and Order, which merely resulted in the court's substitution of the word "vacate" for "amend." The government's appeal was instead directed at the substance of the district court's original Memorandum Opinion and Order denying the government's motion to dismiss. Since the government did not seek to challenge the disposition of its Rule 59(b) motion to alter or amend the Memorandum Opinion and Order, Rule 4(a)(4)(B)(ii) is inapplicable and imposes no jurisdictional bar to our hearing the government's appeal. The applicable Federal Rule of Appellate Procedure is 4(a)(4)(B)(i), not 4(a)(4)(B)(ii).

Under Rule 4(a)(4)(B)(i), the government's notice of appeal was rendered "dormant" at the time that the government filed its Rule 59(b) motion to amend. *See Ross v. Marshall*, 426 F.3d 745, 751–52 (5th Cir. 2005) ("Our court has found that the timely filing of a [Rule 59(b) motion] suspends or renders dormant a notice of appeal until all such motions are disposed of by the trial court. This holds true regardless of whether the motion was filed before or after the notice of appeal."). Once the court ruled on the motion to amend, the government's notice of appeal became effective to appeal the original Memorandum Order and Opinion. *See* FED. R. APP. P. 4(a)(4)(B)(i) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of [a Rule 59(b)

No. 11-10535

motion to amend]—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."). Thus, the government's notice of appeal was proper and timely, and we may exercise jurisdiction over the appeal.

### B. Recovery under 21 U.S.C. § 853 or the TRIA

The district court denied the government's motion to dismiss on the ground that the TRIA relieved the Rubins of having to satisfy their burden for recovery under 21 U.S.C. § 853(n). However, as the Rubins cannot prevail under either § 853 or the TRIA, we reverse the district court's judgment.

### i.    21 U.S.C. § 853(n) does not provide the Rubins with a basis to prevail in the ancillary proceeding.

The criminal forfeiture statute bars a third party claiming an interest in forfeitable property from intervening in the criminal trial or appeal, and also prohibits a third party from commencing a separate action against the United States on the basis of that party's interest in the property. 21 U.S.C. § 853(k), (n). Under the statute, the only way in which a third party may assert an interest in the forfeited property is through an ancillary proceeding. *See id.*; *Libretti v. United States*, 516 U.S. 29, 44 (1995) ("Once the Government has secured a stipulation as to forfeitability, third-party claimants can establish their entitlement to return of the assets only by means of the hearing afforded under 21 U.S.C. § 853(n).").

A third party can prevail in the ancillary proceeding in one of two ways: (1) it can establish priority over the interest of the United States by showing that it had an interest in the property superior to the defendant's interest at the time the defendant committed the crime, 21 U.S.C. § 853(n)(6)(A); or (2) it can establish that it was a bona fide purchaser for value of the property, and, at the time of purchase, had no reason to believe that the property was subject to forfeiture, *id.* at § 853(n)(6)(B). If a third party is unable to satisfy either

8

§ 853(n)(6)(A) or (B), it cannot prevail in the ancillary proceeding. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 334 (6th Cir. 2009) ("[T]he questions potentially at issue in a § 853(n) proceeding are limited . . . [as] § 853(n)(6) offers just two grounds for relief."). If the ancillary proceedings reveal that a third party has a superior interest in the property or is a bona fide purchaser for value, the district court will amend the forfeiture order. 21 U.S.C. § 853(n)(6). In the absence of this showing, the United States acquires clear title to the property. *Id.* at § 853(n)(7).

The Rubins conceded in district court and in their appellate brief that they neither had an interest in HLF's assets at the time the crimes were committed nor were bona fide purchasers for value of HLF's assets after the crimes were committed. There is no basis under 21 U.S.C. § 853(n) for the Rubins to establish their interest in the forfeited property.

> ii.    *The TRIA does not provide the Rubins a basis to assert their interest in the forfeited property.*

The Rubins maintain that § 201 of the TRIA permits execution against HLF's funds notwithstanding their inability to satisfy 21 U.S.C. § 853(n). Under § 201(a), assets are made available for attachment and execution if they are "blocked assets of th[e] terrorist party." The term "blocked asset" means: "any asset seized or frozen by the United States under section 5(b) of the Trading With the Enemy Act . . . or under sections 202 and 203 of the International Emergency Economic Powers Act." TERRORISM RISK INSURANCE ACT OF 2002, Pub. L. No. 107-297, title II, § 201(d)(2)(A), 116 Stat. 2337. By its terms, § 201 does not provide for execution against assets that are not blocked.

The ambit of the TRIA is clear: It operates to reach those funds which have been blocked by the government pursuant to one of two statutes. *See Estate of Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 18 (D.D.C. 2011) ("TRIA . . . applies only to 'blocked assets,' which it defines as 'any asset seized

or frozen by the United States.'"). The TRIA specifically limits the definition of "blocked" assets to those that are seized or frozen under § 5(b) of the Trading with the Enemy Act or § 202 or § 203 of the IEEPA—"a limitation that this Court cannot ignore." *Weinstein v. Islamic Republic of Iran*, 299 F. Supp. 2d 63, 75 (E.D.N.Y. 2004)*; see also Stansell v. Revolutionary Armed Forces of Colom.*, 704 F.3d 910, 915 (11th Cir. 2013) ("[The TRIA] defines what a 'blocked asset' 'means,' not what the term merely could 'include.' When a statutory definition declares what a term 'means' rather than 'includes,' any meaning not stated is excluded."). Moreover, the TRIA "imposes no obligation on the President to maintain [blocked] funds for future attachment [by judgment creditors]." *Smith v. Fed. Reserve Bank of N.Y.*, 346 F.3d 264, 271 (2d Cir. 2003). Nor does it reach those funds which the government has been given authorization to control through another means.

In 2001, the government deemed HLF to be an arm of Hamas and blocked its funds pursuant to the IEEPA. When the government initiated its criminal investigation into HLF's activities in 2004, HLF's assets were still blocked. We must determine whether the government essentially unblocked HLF's assets when it obtained a restraining order under 21 U.S.C. § 853(e)(1)(A) to pursue the criminal forfeiture of those assets.

Under § 853(e)(1)(A), the government can request the restraint of assets subject to forfeiture under § 853(a) to preserve those assets' availability for criminal forfeiture proceedings. *See United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008) ("[The] pre-trial retention of assets believed to be tainted and, therefore, forfeitable, is permissible." (quoting *United States v. Ford*, 64 F. App'x 976, 982 (6th Cir. 2003)). A judicial order authorizing the restraint of those assets initiates the forfeiture proceedings and secures the government's interest

No. 11-10535

so that, upon conviction, the relation-back doctrine can operate as was intended.[5] *See United States v. Jarvis*, 499 F.3d 1196, 1203 (10th Cir. 2007) ("The government . . . has the ability to seek a protective order to restrain tainted assets prior to trial in order to ensure the availability of the tainted property in the event of the defendant's conviction."). Here, the government filed its indictment and received a judicial order authorizing the restraint of HLF's assets in September 2004, several days before the Rubins received their civil judgment against HLF.

The Rubins argue that the filing of the indictment and forfeiture demand did not have any legal effect on HLF's assets because the executive blocking orders and accompanying regulations prohibit essentially all transactions involving blocked property. *See* Executive Orders 12947, 13224; 31 C.F.R. § 594.201. This argument is directly belied by the text of the applicable

---

[5] Title 21 U.S.C. § 853(c)'s relation-back provision requires that "[a]ll right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture." The Supreme Court has observed that this section "reflects the application of the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 627 (1989). "It is a doctrine of retroactive vesting of title that operates only upon entry of the judicial order of forfeiture or condemnation." *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 131 (1993) (Scalia, J., concurring).

Both parties spend a great deal of time discussing the application of the relation-back doctrine under the criminal forfeiture statute. The government argues that, because the relation-back doctrine operates to vest title to HLF's money-laundering proceeds as of the time Hamas began to engage in those activities, those funds never became blocked property under the IEEPA. The Rubins counter that the relation-back provision is merely a "legal fiction" that should not be applied in situations where, as here, a statute clearly prioritizes the interests of terrorist victims over those of the government in allocating a terrorist organization's assets. We need not discuss the merits of these arguments in great detail. Supreme Court precedent indicates that § 853(c)'s relation-back provision takes effect "only upon entry of the judicial order of forfeiture or condemnation." *92 Buena Vista Ave.*, 507 U.S. at 131. At the time the Rubins sought to execute against HLF's assets, the relation-back provision had not yet operated to transfer ownership of those assets to the government. For our purposes, it is sufficient to show that, regardless of the exact point in time at which the relation-back doctrine became effective, the government's restraint of HLF's assets took those assets out of the reach of the TRIA.

11

regulations, which provide an exception to the prohibition on transferring blocked property when that transfer is authorized by license.    *See* 31 C.F.R. §§ 594.201, 594.202, 595.202; *see also Estate of Heiser*, 807 F. Supp. 2d at 18 n.6 (recognizing that, in certain situations, an OFAC-issued license authorizing a transaction involving blocked funds has the effect of removing the prohibition on dealing in those funds).  One such provision reads:

> [A]n appropriate license . . . issued by or pursuant to the direction or authorization of the Director of the Office of Foreign Assets Control before, during, or after a transfer [of blocked property] shall validate such transfer or make it enforceable to the same extent that it would be valid or enforceable but for the provisions of the International Emergency Economic Powers Act.

31 C.F.R. § 594.202; *see also id.* at § 594.201 ("*Unless otherwise authorized . . . by a specific license* expressly referring to this section, any dealing in any security . . . held within the possession or control of a U.S. person . . . whose property or interests in property are blocked pursuant to § 594.201(a) is prohibited." (emphasis added)).

The government obtained such a license (the "forfeiture license") from OFAC on September 23, 2004, which authorized the government "to pursue criminal forfeiture of the assets of the Holy Land Foundation for Relief and Development ('HLF') blocked pursuant to" Executive Orders 12947 and 13224. The license further authorized the government to pursue "restraining orders" in order to preserve the assets for criminal forfeiture.  Notwithstanding the status of HLF's assets as blocked, the government's receipt of a license from OFAC restrained those assets and permitted the government to proceed with the criminal forfeiture process.

By the time that the Rubins obtained their judgment against HLF on September 27, 2004, the government had restrained HLF's assets to preserve them for potential criminal forfeiture.  As the Rubins concede in their brief, the

government's restraining order became legally effective before the Rubins received a judgment in their favor giving them the right under the TRIA to execute against HLF's assets.  Once an indictment had been filed and the assets restrained, victims of terrorism could no longer execute against those assets under the TRIA.  *See Estate of Heiser*, 807 F. Supp. 2d at 18 n.6 ("Thus, because transactions  . . . are undertaken under an OFAC licensing scheme, they are unblocked and not subject to attachment."); *Bank of N.Y. v. Rubin*, 484 F.3d 149, 150 (2d Cir. 2007) (determining that assets blocked pursuant to an Executive Order, but also subject to an OFAC general licensing scheme, were not blocked and therefore were not subject to attachment under the TRIA).  Consequently, the TRIA could not be applied to those funds since they no longer qualified as blocked under that statute.

> iii.     *The TRIA does not trump the criminal forfeiture statute.*

The Rubins argue that, even if HLF's assets do not qualify as blocked, they should still prevail because the provisions of the TRIA trump the criminal forfeiture provisions of 21 U.S.C. § 853.  The Rubins' argument is premised on the language in § 201 of the TRIA, which requires its application "notwithstanding any other provision of law." *See supra* note 5.  This phrase, the Rubins argue, operates to override all other statutory limitations on attachment and execution of blocked assets by judgment creditors.  Under this reading, the Rubins would be able to execute against HLF's restrained assets even though the assets were no longer blocked under any of the sections explicitly delineated by the TRIA.  The government responds that the "notwithstanding" clause does not have the sweeping effect ascribed to it by the Rubins and can operate only to override conflicting statutes.  As § 853 does not conflict with § 201 of the TRIA, the government contends, the "notwithstanding" clause does not preclude the application of § 853's criminal forfeiture provisions.  We agree.

In accordance with the holdings of other courts of appeals, we previously have noted that the "notwithstanding" clause only applies when another provision of law conflicts with the TRIA. *See, e.g., Hegna v. Islamic Republic of Iran,* 376 F.3d 485, 494 n.34 (5th Cir. 2004) (observing that the "notwithstanding" clause did not compel the application of the TRIA because the other statute at issue did not conflict with the TRIA); *Smith*, 346 F.3d at 271 ("[T]he notwithstanding clause applies only when some other provision of law conflicts with TRIA." (citation and internal quotation marks omitted)); *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.,* 892 F. Supp. 2d 1038, 1051 (N.D. Ill. 2012) ("[The TRIA] effectively supersedes all laws *with which it actually conflicts.*" (emphasis added)).

According to the Rubins, 21 U.S.C. § 853 conflicts with the TRIA because the application of § 853 and the corresponding grant to the government of a license to restrain HLF's assets prevented the Rubins from executing against those assets. Since HLF's assets were blocked under the IEEPA before the government exercised its forfeiture power, the Rubins contend that the assets remained *effectively* blocked and thus were subject to execution under the TRIA. The district court agreed, finding that once HLF's property was blocked, the "Government [and the] defendants . . . *treated and considered* the property 'blocked' until the time HLF was convicted. For these reasons, the Court considers the [property] 'blocked' at the time the court entered judgment for the Rubins, in September 2004." *Holy Land Found.*, 2011 WL 3703333, at *6 (emphasis added). The Rubins' argument and the district court's judgment, however, find conflict between two statutes where there is none and grant undue power to the "notwithstanding" clause.

Section 201 of the TRIA "operates to empower a plaintiff with a 'judgment' against a 'terrorist party' to execute against any 'blocked assets' of that party." *Smith*, 356 F.3d at 271 (quoting TRIA § 201(a)). As discussed above, HLF's

assets were not blocked at the time the Rubins obtained their judgment. The fact that the government and the parties "treated and considered" the assets as blocked throughout the criminal trial, *Holy Land Found.*, 2011 WL 3703333, at \*6, does not make them so. Since HLF's assets already had been restrained under 21 U.S.C. § 853(e) at the time the Rubins received their judgment, the Rubins' right under the TRIA to execute against those funds never became effective and therefore did not create a conflict between the statutes. Without such a conflict, the "notwithstanding" clause does not operate to preclude the government's restraint of HLF's assets in anticipation of criminal forfeiture proceedings.

The Rubins' argument about the breadth of the "notwithstanding" clause is similarly unavailing. In their brief, the Rubins advocate an interpretation of TRIA § 201's "notwithstanding" clause that operates to override all statutes that, *by their purpose or effect*, shield assets from attachment or execution. "Congress'[s] use of the 'notwithstanding' language," the Rubins argue, "was clearly intended to prevent the Executive branch from using *any* statute, both those it had already employed and new provisions it might try to use in the future, to block enforcement of terrorism judgments." This sweeping assertion assumes that the "notwithstanding" clause trumps any other law that has the incidental effect of removing funds from the reach of judgment creditors.

Were we to adopt the Rubins' interpretation of TRIA § 201, we would broaden the reach of the provision by overriding the statutorily supplied definition of "blocked" assets. *See* TERRORISM RISK INSURANCE ACT § 201(d)(2)(A). The presence of the "notwithstanding" clause does not alter our responsibility to abide by the definitions provided by Congress in the same statute. Our role in interpreting the TRIA is to "[g]ive effect to the text congress enacted," not to "rewrite the statute to reflect a meaning we deem more desirable." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008). The

definition of "blocked assets" set forth in the TRIA is narrow and does not encompass those assets that, while not technically blocked, have been rendered inaccessible to judgment creditors as a result of the operation of another statute. As HLF's assets lie outside the scope of this circumscribed definition, we could not hold that they are "blocked" without thereby altering the meaning and effect of the TRIA.

Moreover, contrary to the Rubins' assertions, we need not look to the legislative history of the TRIA to determine the meaning of the "notwithstanding" clause. The language of TRIA § 201 is not ambiguous; it allows a plaintiff with a judgment against a terrorist organization to execute against that organization's assets. *See Smith*, 346 F.3d at 271. The TRIA does not nullify the prior dispensation of funds that were not blocked at the time the terrorism victims obtained a judgment in their favor. The "notwithstanding" clause should not be read to override the operation of other statutory provisions that do not interfere with the TRIA's stated purpose. *See Hegna*, 376 F.3d at 494 n.34 (refusing to apply the "notwithstanding" clause of the TRIA to trump another statute that did not conflict with the TRIA). In the absence of such a conflict, the "notwithstanding" clause does not function in the manner proposed by the Rubins.

Since the statutory language of § 201 of the TRIA is clear, we decline to look beyond its text for guidance. *Milner v. Dep't of the Navy,* 131 S. Ct. 1259, 1266 (2011) (refusing to apply "ambiguous legislative history to muddy clear statutory language"). The Rubins have failed to present compelling evidence in the text of the statute or in caselaw interpreting the statute to convince us that the "notwithstanding" clause has their desired effect. We therefore hold that § 201 of the TRIA does not trump the criminal forfeiture provisions of 21 U.S.C. § 853.

No. 11-10535

## C. *Jurisdiction over HLF's assets*

Finally, the Rubins assert the *in custodia legis* doctrine to challenge the district court's jurisdiction to seize HLF's forfeitable assets.  This doctrine dictates that, where "a court of competent jurisdiction takes possession of property through its officers, that property is withdrawn from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession." *In re Rehkopf Mattress Sales, Inc.*, 479 F.2d 67, 70 (5th Cir. 1973).  At the time the government initiated forfeiture proceedings against HLF's assets, many of those assets were in the custody of the District Courts for the Southern District of New York and the Western District of Washington.[6]  The Rubins maintain that, applied to the facts, the doctrine prevents the District Court for the Northern District of Texas from executing against HLF's assets because those assets are in the custody of courts in other jurisdictions.

The Rubins are foreclosed from raising this argument because it is an impermissible third-party challenge to the forfeiture of HLF's assets.  *See* 21 U.S.C. § 853(n).  Section 853(n) provides only two avenues of relief in an ancillary proceeding, and both require a party to establish an ownership interest in the forfeited funds.  *See supra* Section III(B)(i).  The advisory committee notes to Federal Rule of Criminal Procedure 32.2 further counsel that § 853(n) "does not involve relitigation of the forfeitablity of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property."  FED. R. CRIM. P. 32.2 advisory committee's note.  The Second, Eighth, Tenth and Eleventh Circuits have all agreed that a third party has no standing to challenge a preliminary order's finding of forfeitability.  *United States v. Davenport*, 668

---

[6] In early 2005, federal courts in New York and Washington issued writs of execution on the Rubins' judgment against Hamas, thereby placing many of HLF's assets within the legal custody of those courts.  Presently, those funds remain in the custody of federal courts in New York and Washington.

F.3d 1316, 1321 (11th Cir. 2012) ("The Advisory Committee Notes to the 2000 adoption of Rule 32.2 state the ancillary proceeding for third-party claimants 'does not involve relitigation of the forfeitability of the property,' which has already been ordered in the criminal case."); *United States v. Porchay*, 533 F.3d 704, 710 (8th Cir. 2008) ("Section 853(n) does not give a third party the right to challenge the legality of the seizure; the plain language of the subsection indicates that its purpose is to ensure that the property is not taken from someone with a right to the property that is superior to the defendant."); *see also United States v. Andrews*, 530 F.3d 1232, 1236–37 (10th Cir. 2008); *DSI Assocs. LLC v. United States,* 496 F.3d 175, 184–85 (2d Cir. 2007). HLF is the only party that has standing to challenge the forfeitability of its assets. Since HLF has not challenged the forfeitability of its assets in this appeal, the issue is not before us.

Even if HLF had brought a challenge to the forfeitability of its assets under the *in custodia legis* doctrine, that argument would be precluded by the terms of the criminal forfeiture statute. The relevant provision, 21 U.S.C. § 853(l), states that "[t]he district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section or which has been ordered forfeited under this section." This reasoning is in alignment with the accepted tenet that criminal forfeitures are *in personam* judgments. *See United States v. Casey*, 444 F.3d 1071, 1075 (9th Cir. 2006). Thus, the district court's power to enter orders regarding HLF's property located outside of its jurisdiction "derives from its personal jurisdiction over the defendant," *United States v. Gilbert*, 244 F.3d 888, 920 (11th Cir. 2001), and is not "dependent upon seizure of a physical object," *United States v. Ursery,* 518 U.S. 267, 289 (1996); s*ee also United States v. $814,254.76, in U.S. Currency, Contents of Valley Nat'l Bank Account No. 1500-8339*, 51 F.3d 207, 211 (9th Cir.

1995) ("Thus, the defendant in a criminal forfeiture proceeding is the *person*, and the defendant in a civil forfeiture proceeding is the particular *property*."). In this *in personam* proceeding, the district court's jurisdiction over HLF, and not its jurisdiction over HLF's assets, is the dispositive factor in assessing whether those assets are available for criminal forfeiture to the government. As such, the *in custodia legis* doctrine does not preclude the district court's *in personam* jurisdiction over HLF.

## IV.  CONCLUSION

The Rubins have failed to demonstrate that they are entitled to recovery under either 21 U.S.C. § 853 or § 201 of the TRIA. Furthermore, contrary to the Rubins' and the district court's arguments, the provisions of the TRIA do not trump those of § 853, where, as here, the government had received a license to restrain terrorist assets for criminal forfeiture proceedings prior to the victims' civil judgment against the terrorist organization. We REVERSE and REMAND for proceedings not inconsistent with this opinion.