
# IN THE SUPREME COURT OF GUAM

**LEEVIN TAITANO CAMACHO**,
**Attorney General of Guam,**
Plaintiff-Appellee,

**v.**

**DAFNE M. SHIMIZU, Director, Guam Department of Revenue
and Taxation; LOURDES A. LEON GUERRERO, Governor of Guam;
ATLAS AMUSEMENT ENTERPRISES, INC.; DARRYL R. STYLES
d/b/a D&D GAMES; GUAM MUSIC, INC.; and DOES 1-10,**
Defendants-Appellants.

Supreme Court Case No. CVA20-013
Superior Court Case No. CV0780-13

## OPINION

## Cite as: 2021 Guam 22

Appeal from the Superior Court of Guam
Argued and submitted on April 7, 2021
Via Zoom video conference

Appearing for Defendant-Appellant
Guam Music, Inc.:
F. Randall Cunliffe, *Esq.*
Cunliffe & Cook
A Professional Corporation
210 Archbishop Flores St., Ste. 200
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Marianne Woloschuk, *Esq.*
Assistant Attorney General
Office of the Attorney General
Litigation Division
590 S. Marine Corps Dr.
Tamuning, GU 96913


**E-Received**
12/21/2021 9:28:20 AM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; KATHERINE A. MARAMAN, Associate Justice.

**PER CURIAM:**

[1]     Defendant-Appellant Guam Music, Inc. appeals from a grant of summary judgment for Plaintiff-Appellee Leevin Taitano Camacho, Attorney General of Guam.  In granting summary judgment, the Superior Court invalidated gaming regulations created by the Guam Department of Revenue and Taxation because they were not promulgated under Guam's Administrative Adjudication Law, 5 GCA § 9300 *et seq.*  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]     This is the third appeal from Superior Court Case No. CV0780-13, and the fifth appeal in total, we have entertained about the Guam Department of Revenue and Taxation's ("DRT") licensing of electronic gaming activities.  *See generally Limtiaco v. Camacho*, 2009 Guam 7; *Rapadas v. Benito*, 2011 Guam 28; *Barrett-Anderson v. Camacho ("Barrett-Anderson I")*, 2015 Guam 20; *Barrett-Anderson v. Camacho (Barrett-Anderson II")*, 2018 Guam 20.  These cases provide an extensive history of Guam's electronic gaming controversy.  Here, however, we recite only the core facts relevant for the disposition of this appeal.

[3]     In 2001, *I Liheslaturan Guåhan* ("Legislature") enacted Guam Public Law No. 26-052, "An Act to *Repeal* and *Reenact* § 64.40 of Title 9, and § 39110 of Title 22, All of the Guam Code Annotated Relative to Illegal Cockfight."  Guam Pub. L. 26-052 (Oct. 17, 2001).  Section 4 of this law granted certain rule-making authority to DRT:

> **Section 4.  Promulgation of Rules.**  Notwithstanding any other provisions of law, the Cockpit License Board, together with the Department of Revenue and Taxation, is hereby authorized to promulgate necessary rules and regulations to create a comprehensive regulatory scheme to regulate all gaming activities on Guam; *provided*, that the rules and regulations shall restrict gaming activities to those authorized and licensed on Guam as of August 1, 2001.

P.L. 26-052:4. In accordance with P.L. 26-052:4, DRT submitted proposed gaming regulations to the Legislature. One section of these regulations purported to allow the licensure of "[e]lectronic gaming devices that have been registered, or were at any time previously registered, by [DRT] pursuant to 11 Guam Code Annotated, Chapter 22, Article 2, prior to August 1st 2001." 3 Guam Admin. R. & Regs. ("GAR") § 7114(a)(5) (2003).

[4]      In 2004, the Legislature enacted P.L. 27-077, "An Act to *Repeal* and *Reenact* Chapter 16 and to *Amend* Other Sections of Title 1, Guam Code Annotated, to Update and Modernize the Publication of the Laws of Guam and to Establish the Compiler of Laws within the Supreme Court of Guam." Guam Pub. L. 27-077 (Apr. 26, 2004). Section 1 of this law provided, among other things, that all regulations promulgated by departmental directors and submitted to the Legislature before the 27th Legislature would be codified and published. *See* P.L. 27-077:1; 1 GCA § 1610 (2005). Thus, DRT's gaming regulations were added to Guam's Administrative Rules and Regulations at 3 GAR § 7101 *et seq.*, but the regulations were not posted publicly on the Guam Compiler of Laws website until 2012.

[5]      In 2008, the Office of the Attorney General ("OAG") advised DRT that the electronic gaming devices it licensed were illegal gambling devices. *Barrett-Anderson I*, 2015 Guam 20 ¶ 7. Upon receiving this advice, DRT informed gaming device license-holders that it would no longer renew the licenses. *Id.* In response, the then-Acting Governor of Guam ordered the then-Acting Director of DRT to resume issuing the licenses. *Id.* ¶ 8. DRT complied; electronic gaming device licenses were later issued as before, and a tide of litigation followed. *See Barrett-Anderson II*, 2018 Guam 20 ¶¶ 4-8.

[6]      By early 2013, "the dispute was apparently resolved," and Guam Music, Inc. ("Guam Music"), DRT, and the OAG stipulated to dismiss the existing gaming regulation cases. *Barrett-*

*Anderson I*, 2015 Guam 20 ¶ 9. However, later that year, the Legislature enacted P.L. 32-060, "An Act to *Add* New §§ 5201 to 5205 to Chapter 5 of Title 11, Guam Code Annotated, Relative to Gaming . . . ." Guam Pub. L. 32-060 (July 9, 2013). The newly enacted section 5205 authorized certain bingo, lottery, and cockfighting activities, and "[a]ll other limited gaming activities as authorized pursuant to statute." 11 GCA § 5205(a)(4) (added by P.L. 32-060:2). With the controversy rekindled, the OAG commenced this case, seeking a declaratory judgment that the gaming regulations were invalid. The OAG amended its complaint to add another request for relief: "A declaration that the electronic gaming device licenses issued pursuant to 3 [GAR] § 7114(a)(5) or P.L. 32-060 or both are void and must be immediately revoked and that no new licenses shall be issued . . . ." Record on Appeal ("RA"), tab 7 at 11 (First Am. Compl., Aug. 15, 2013).

**[7]** The Superior Court granted the defendants' motion to dismiss, holding the Superior Court lacked subject matter jurisdiction because the OAG failed to exhaust its administrative remedies under Guam's Administrative Adjudication Law ("AAL"). *Barrett-Anderson I*, 2015 Guam 20 ¶¶ 1, 12. On appeal, this court reversed, applying a legal exception to the doctrine of exhaustion where administrative exhaustion would be futile. *Id.* ¶¶ 30-34. After this court's first remand, the OAG moved for summary judgment. But before the Superior Court resolved this motion, the case came back before this court on interlocutory appeal over financial responsibility for DRT's legal representation. We ordered DRT to pay for its own counsel. *See Barrett-Anderson II*, 2018 Guam 20 ¶ 32.

**[8]** After our second remand, the Superior Court heard oral arguments on the motion for summary judgment and then granted the motion via Decision and Order. The Superior Court filed

its Judgment, declaring the electronic gaming regulations in 3 GAR § 7114(a)(5) void and voiding all gaming device licenses issued under the regulations.[1]  Guam Music timely appealed.

## II.  JURISDICTION

**[9]**      This court has jurisdiction over appeals from final judgments rendered by the Superior Court of Guam.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-57 (2021)); 7 GCA §§ 3107(b), 3108(a) (2005).

## III.  STANDARD OF REVIEW

**[10]**      This court reviews questions of law *de novo*.  *Barrett-Anderson II*, 2018 Guam 20 ¶ 12 (citing *Guam Resorts, Inc. v. G.C. Corp.*, 2013 Guam 18 ¶ 33).  Likewise, this court reviews issues involving statutory interpretation *de novo*.  *Town House Dep't Stores, Inc. v. Dep't of Educ.*, 2012 Guam 25 ¶ 11 (citing *Mendiola v. Bell*, 2009 Guam 15 ¶ 11).

## IV.  ANALYSIS

### A. The Legislature's Grant of Power to DRT to Make Gaming Regulations Is Not an Unconstitutional Delegation of Legislative Authority

**[11]**      Before reaching the issue on which the Superior Court decided the motion for summary judgment—promulgation of the gaming regulations—we first address the OAG's argument that P.L. 26-052:4 is an unconstitutional delegation of legislative authority.  The OAG asserts that the Legislature's grant of rulemaking power to DRT "contains no standards for regulating gaming activities" and therefore "gives DRT unfettered discretion to determine how to regulate gaming activities."  Appellee's Br. at 13 (Dec. 9, 2020).  The OAG argues that P.L. 26-052:4 improperly delegates the Legislature's lawmaking power to an executive branch agency.  We disagree.

---

[1] This opinion solely addresses the licensure of gaming or amusement devices under 3 GAR § 7114(a)(5). We express no judgment at this time over whether gaming devices may be licensed under a statutory provision, i.e., 11 GCA § 5205 or 11 GCA § 22202.

**[12]**    It is rare for courts to invalidate legislative delegations to administrative agencies. The United States Supreme Court has "upheld, again without deviation, Congress' ability to delegate power under broad standards." *Mistretta v. United States*, 488 U.S. 361, 373-74 (1989) (collecting cases); *see also Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 474 (2001). In the words of one state court, "The Supreme Court's jurisprudence demonstrates [the] bar to congressional delegation is not a substantial one to meet." *Roe v. Replogle*, 408 S.W.3d 759, 766 (Mo. 2013) (en banc). This comports with our policy of presuming duly enacted legislation to be constitutional, with all doubt resolved in favor of legality. *See Underwood v. Guam Election Comm'n*, 2006 Guam 17 ¶¶ 51-52 (citations omitted).

**[13]**    The "fundamental precept" of legislative delegation "is that the lawmaking function belongs to Congress and may not be conveyed to another branch [of government] or entity." *Loving v. United States*, 517 U.S. 748, 758 (1996) (internal citation omitted). Thus, "[i]n a delegation challenge, the constitutional question is whether the statute has delegated legislative power to the agency." *Whitman*, 531 U.S. at 472. There is a distinction, however, between "the power to make law, which is non-delegable, and the authority to execute a law, which the legislature may properly delegate to an administrative agency." *Amica Life Ins. Co. v. Wertz*, 462 P.3d 51, 54 (Colo. 2020) (en banc). So while a legislature "generally cannot delegate its legislative power to another Branch," a legislature is not prevented from "obtaining the assistance of its coordinate Branches" so long as such assistance is "fixed according to common sense and the inherent necessities of the government co-ordination." *Mistretta*, 488 U.S. at 372 (citations omitted).

**[14]**    There is no constitutional violation where a legislature "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform."

*Whitman*, 531 U.S. at 472 (second alteration in original) (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)). "To articulate an intelligible principle to satisfy the nondelegation doctrine, the legislature must 'clearly delineate[] the general policy, the public agency which is to apply it, and the boundaries of this delegated authority.'" *Unum Life Ins. Co. v. District of Columbia*, 238 A.3d 222, 232 (D.C. Ct. App. 2020) (alteration in original) (quoting *Mistretta*, 488 U.S. at 372-73); *see also People v. Holmes*, 959 P.2d 406, 409-10 (Colo. 1998) (en banc) (rephrasing intelligible principle test as "what job must be done, who must do it, and the scope of [the] authority" (quoting *Swisher v. Brown*, 402 P.2d 621, 626 (Colo. 1965) (en banc)). Here, P.L. 26-052:4 sets forth a general policy—regulating gaming activities legal under Guam law as of August 1, 2001—and tasks DRT as the agency to apply that policy. The closer question is whether, as the OAG contends, P.L. 26-052:4 grants DRT "unfettered discretion"—in other words, a lack of adequate boundaries to constrain DRT's discretion. *See* Appellee's Br. at 12-13.

[15]     Public Law 26-052:4 offers little specific guidance on how DRT should accomplish the legislative will. However, the degree to which a legislative delegation "must specify its policies and standards . . . is not capable of precise definition." *Lichter v. United States*, 334 U.S. 742, 779 (1948). The U.S. Supreme Court generally affords Congress significant leeway to delegate in seemingly vague terms. For instance, the Supreme Court has upheld delegations where an agency was tasked with achieving "'just and reasonable rates' for sales of natural gas," "prices yielding a 'fair return' or the 'fair value' of property," or "'fair and reasonable' rent for premises," despite minimal guidance on how the agency should accomplish these tasks. *Id.* at 786 (internal citations omitted) (collecting cases); *see also Levine v. Whalen*, 349 N.E.2d 820, 823-24 (N.Y. 1976) (collecting similar New York cases). Thus, a legislative delegation to an executive agency is not unconstitutional or inorganic just because the enabling statute could be more specific. *See*

*Whitman*, 531 U.S. at 475 ("[W]e did not require [an enabling] statute to decree how 'imminent' was too imminent, or how 'necessary' was necessary enough . . . ."); *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990) ("Because [the statute] authorizes the Secretary to promulgate those regulations which are 'necessary,' it almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary.'"); *see also Owens v. Republic of Sudan*, 531 F.3d 884, 893 (D.C. Cir. 2008) (upholding delegation to U.S. Secretary of State to address international acts of terrorism despite enabling statute's failure to define "international acts of terrorism").

[16]     With these principles in mind, we turn to the mandate of P.L. 26-052:4.  The statute directs DRT "to promulgate necessary rules and regulations to create a comprehensive regulatory scheme to regulate all gaming activities on Guam; *provided*, that the rules and regulations shall restrict gaming activities to those authorized on Guam as of August 1, 2001."  P.L. 26-052:4.  The term "necessary" is not defined in the statute, but given the cases exemplified above, determining what is "necessary" is committed permissibly to DRT's expertise.  The second clause of P.L. 26-052:4 expressly limits the gaming activities DRT may regulate, specifically,  those gaming activities authorized on Guam as of August 1, 2001.[2]  This creates a relevant boundary on DRT's regulatory power.  *Cf. Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 445 (5th Cir. 2020) (statutory limitation on class of things to be regulated "ha[s] the effect of constricting the [agency's] discretion to a narrow and defined category." (quoting *United States v. Ambert*, 561 F.3d 1202, 1214 (11th Cir. 2009))).

---

[2] The OAG contends that *no* electronic gaming activities were authorized by statute on Guam on August 1, 2001.  Appellee's Br. at 15 (Dec. 9, 2020).  However, we need not resolve this argument here.  Whether DRT regulated beyond the bounds of its delegated power does not bear on whether the Legislature's action—the delegation to DRT—was unconstitutional or inorganic.  And it is unnecessary to our holding here to determine whether DRT regulated beyond the bounds of its delegated power, as we resolve this case on other grounds.  *See infra* Part IV(B), (C); *see also Unpingco v. Derry*, 2021 Guam 1 ¶ 21 ("[A] court will not address issues unnecessary to the resolution of the case before it." (quoting *Hemlani v. Hemlani*, 2015 Guam 16 ¶ 33)).

[17]     Given the permissive standards applied by other courts, we are persuaded that no impermissible delegation occurred here.  We hold that P.L. 26-052:4's language restricting DRT to creating only "necessary" gaming regulations, and limiting the class of gaming activities DRT may regulate, sufficiently fetters DRT's regulatory discretion.  Because the legislative grant of power has sufficient boundaries, we discern an "intelligible principle" in P.L. 26-052:4 and hold the legislative delegation to DRT constitutional and organic.

**B.  DRT's Failure to Comply with the AAL Rendered the Gaming Regulations Void**

[18]     Although the Legislature's delegation to DRT was not unconstitutional, this holding does not render DRT's gaming regulations valid automatically.  We must next determine whether the gaming regulations complied with the AAL or whether, as Guam Music contends, the gaming regulations were exempted from the AAL.

[19]     The Superior Court, in granting summary judgment for the OAG, determined that DRT's "promulgation" of the gaming regulations violated several provisions of the AAL.  *See* RA, tab 178 at 6-8 (Dec. & Order, Mar. 13, 2020).  DRT evidently failed to (1) provide notice of public hearing in a newspaper of general circulation in Guam, contravening 5 GCA § 9301(a); (2) hold a public hearing, contravening 5 GCA § 9301(b); and (3) provide an economic impact statement for its regulations, contravening 5 GCA § 9301(d).  *See id.* at 7.  The Superior Court therefore applied 5 GCA § 9303(c), providing "[n]o rule shall be effective until after compliance with the provisions of [the AAL]," to conclude that DRT's non-compliance rendered the gaming regulations void.  *See id.* at 7-8; *see also Barrett-Anderson I*, 2015 Guam 20 ¶ 24 (court may declare agency rule invalid if it finds rule "was adopted without compliance with statutory rule-making procedures" (quoting 5 GCA § 9309(b) (2005))).  Guam Music acknowledges DRT did not comply with the AAL but argues P.L. 26-052:4's use of the statutory phrase "notwithstanding any other provision of law"

means DRT was never required to comply with the AAL. *See* Appellant's Br. at 9-10 (Oct. 19, 2020).

[20] "When interpreting a statute, 'the plain language of a statute must be the starting point.'" *Barrett-Anderson I*, 2015 Guam 20 ¶ 23 (quoting *Aguon v. Gutierrez*, 2002 Guam 14 ¶ 6). Black's Law Dictionary defines the word "notwithstanding" to mean "despite; in spite of." *Notwithstanding*, *Black's Law Dictionary* (11th ed. 2019); *see also Notwithstanding*, Merriam-Webster, https://www.merriam-webster.com/dictionary/notwithstanding (last visited Dec. 15, 2021) (defining "notwithstanding" to mean "despite"). The plain meaning of the phrase "notwithstanding any other provision of law" is "despite any other provision of law." Guam Music thus argues that this language "means what it says," Appellant's Reply Br. at 3 (Dec. 23, 2020)—that it exempts DRT from complying with any other provision of law, including the AAL.

[21] But courts typically construe "notwithstanding" clauses to supersede only *conflicting* provisions of law. *See, e.g.*, *United States v. Novak*, 476 F.3d 1041, 1046 (9th Cir. 2007) ("[S]tatutory 'notwithstanding' clauses broadly sweep aside potentially conflicting laws."); *Shoshone Indian Tribe of Wind River Rsrv. v. United States*, 364 F.3d 1339, 1346 (Fed. Cir. 2004) ("The introductory phrase '[n]otwithstanding any other provision of law' connotes a legislative intent to displace any other provision of law that is contrary to the Act . . . ." (alteration in original)); *State v. Zimmer*, 880 N.Y.S.2d 813 814 (App. Div. 2009) ("The phrase '[n]otwithstanding any other provision of law' . . . 'clearly supersedes any inconsistent provisions of state law[.]'" (alteration in original) (emphasis omitted)). A notwithstanding clause does not excuse compliance with non-conflicting laws. *See, e.g.*, *Arias v. Superior Court*, 209 P.3d 923, 931 (Cal. 2009) ("'The statutory phrase "notwithstanding any other provision of law" . . . declares the legislative intent to override all *contrary* law[,]' . . . [meaning] only those provisions of law that conflict with the act's

provisions—not, as defendants contend, every provision of law . . . ."); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 689 (5th Cir. 2013) ("The 'notwithstanding' clause should not be read to override the operation of other statutory provisions that do not interfere with [the statute's] stated purpose.").

[22]     We perceive no conflict between P.L. 26-052:4 and the AAL because DRT could have complied with both P.L. 26-052:4 and the AAL.  The mandate of P.L. 26-052:4 directs DRT "to promulgate necessary rules and regulations to create a comprehensive regulatory scheme to regulate all gaming activities on Guam," P.L. 26-052:4, while the AAL provides for a "uniform method of making, adopting, promulgating, filing and publishing rules by all agencies of [Guam], to permit public participation therein and provide a method of making rules readily accessible to the public," 5 GCA § 9300 (2005).  Nothing in the AAL explicitly or implicitly prevents DRT from promulgating gaming regulations, and nothing in the text of P.L. 26-052:4 expresses a legislative intent for DRT to be exempted from the AAL.  And our review of the legislative history of P.L. 26-052:4 reveals no references to the AAL generally or to its specific rule-making requirements.

[23]     Generally, if any interpretation of two allegedly conflicting statutes permits both statutes to stand, "[a] court must adopt that interpretation, 'absent a clearly expressed congressional intention to the contrary.'" *Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1299 (11th Cir. 2010) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006)); *see also Kosmatka v. Safety Resp. Div. of N.D. State Highway Dep't*, 196 N.W.2d 402, 404-05 (N.D. 1972) ("It is fundamental that when two statutes relating to the same subject matter appear to be in conflict, they should be construed whenever possible to give effect to both statutes if this can be done without doing violence to either."); *Paquin v. N. Mich. Univ.*,

262 N.W.2d 672, 673 (Mich. Ct. App. 1978) (similar). We elect such an interpretation here. We interpret the "notwithstanding any other provision of law" language of P.L. 26-052:4 to apply only to laws that would conflict with the purpose of that statute: permitting DRT to promulgate necessary rules and regulations to regulate gaming activities. The AAL does not conflict with that purpose. Therefore, the "notwithstanding any other provision of law" language does not exempt DRT from complying with the AAL. The trial court did not err in voiding the gaming regulations on this basis.

**C. Subsequent Legislative Enactments Did Not Cure or Validate the Gaming Regulations**

[24] Finally, Guam Music contends that even if DRT's gaming regulations were initially invalid, they were cured or validated by two subsequent legislative enactments: P.L. 27-077 and P.L. 32-060. *See* Appellant's Br. at 15-20. We disagree.

[25] Guam Music correctly asserts that a legislature has the power to cure previously invalid agency regulations by incorporating those regulations into a new law. *See S. Cal. Gas Co. v. Pub. Utils. Comm'n*, 695 P.2d 186, 188 (Cal. 1985) ("[T]he Legislature may supply retroactively, through a curative or validating act, any authority it could have provided prospectively through an enabling act."); *Thomas v. Network Sols., Inc.*, 176 F.3d 500, 506 (D.C. Cir. 1999) ("[L]egislation may confirm and render lawful otherwise unlawful federal agency actions . . . ."). Subsequent legislation can cure a prior invalid agency action if "the legislature originally had the power to authorize the acts done or to confer the powers exercised, and . . . contracts are not impaired nor vested rights disturbed." *State ex rel. Tomasic v. Kansas City*, 636 P.2d 760, 775 (Kan. 1981) (citing *Beeler & Campbell Supply Co. v. Warren*, 100 P.2d 700 (Kan. 1940)); *see also Priest v. Can. Life Assurance Co.*, 446 N.W.2d 352, 354 (Mich. Ct. App. 1989) (per curiam) (similar); *Hewitt v. Rincon Del Diablo Mun. Water Dist.*, 165 Cal. Rptr. 545, 552 (Ct. App. 1980) (similar).

**[26]**     We agree with Guam Music that the two requirements articulated by *State ex rel. Tomasic v. Kansas City*, 636 P.2d 760 (Kan. 1981), and similar cases are satisfied here.  First, as we held above, the Legislature has the power to delegate the creation of gaming regulations to DRT, subject to constitutional limitations on that delegation.  Likewise, the Legislature undoubtedly has the power to create gaming laws by its own legislative enactment.  *See* 48 U.S.C.A. § 1423a (Westlaw through Pub. L. 117-57 (2021)) ("The legislative power of Guam shall extend to all rightful subjects of legislation not inconsistent with the provisions of this chapter and the laws of the United States applicable to Guam."); *Guam Greyhound, Inc. v. Brizill*, 2008 Guam 13 ¶ 18 (recognizing Guam Legislature's inherent lawmaking powers).  Second, nothing in the record on appeal indicates that the legislative ratification of gaming regulations would impair contracts or other vested rights, nor has the OAG argued to the contrary.  We therefore conclude that the Legislature has the power to ratify DRT's gaming regulations.

**[27]**     However, while the Legislature *may* ratify DRT's gaming regulations, we cannot conclude the Legislature did so with P.L. 27-077 or P.L. 32-060.  A legislative ratification requires a legislature to evince a clear intent to ratify.  *See, e.g.*, *EEOC v. CBS, Inc.*, 743 F.2d 969, 974 (2d Cir. 1984) ("[R]atifying legislation must recognize that the actions involved were unauthorized when taken and must also expressly ratify those actions in clear and unequivocal language."); *People v. Reedy*, 708 N.E.2d 1114, 1120 (Ill. 1999) (curative legislation "must exhibit on its face evidence that it is intended to cure or validate defective legislation"); *see also Greene v. McElroy*, 360 U.S. 474, 506-07 (1959) ("acquiescence or nonaction" by legislature not sufficient to constitute ratification).

**[28]**     Our review of P.L. 27-077 and P.L. 32-060 reveals no evidence that the Legislature intended to ratify DRT's gaming regulations.  Public Law 27-077 provides:

> All rules and regulations or amendments to rules and regulations promulgated by any Director, and/or board for departments, agencies, and instrumentalities of the government of Guam, pursuant to specific statute or through the Administrative Adjudication Act, having been transmitted to and received by the Legislative Secretary of *I Liheslaturan Guåhan* prior to the commencement of *I Mina'Bente Siete Na Liheslaturan Guåhan*, and not otherwise acted upon, shall be codified and published as provided for in this Act.

P.L. 27-077:1. We find nothing in this text or in the statute's legislative history to suggest the Legislature specifically intended to ratify DRT's gaming regulations; nothing in the text or history of the statute mentions these regulations specifically or gaming activities generally. Furthermore, P.L. 27-077 provides for the codification of *promulgated* rules and regulations. As the OAG notes, to "promulgate" means "to declare or announce publicly; to proclaim" or "to make known by open declaration; to announce officially." Appellee's Br. at 20 (quoting *Black's Law Dictionary* 1231 (7th ed. 1999); Webster's Third New Int'l Dictionary 1816 (1986)). However, DRT failed to provide notice of public hearing in a newspaper of general circulation in Guam and failed to hold a public hearing. "Promulgation," then, is precisely what DRT failed to do. Even if we assumed that P.L. 27-077 ratified all properly promulgated regulations, the gaming regulations would not qualify because they were not promulgated under the AAL. We hold that P.L. 27-077 did not ratify DRT's gaming regulations.

[29] Likewise, we find nothing in P.L. 32-060 to evince the Legislature's intent to ratify DRT's gaming regulations. Unlike P.L. 27-077, P.L. 32-060 does explicitly mention gaming activities. The legislative intent section of P.L. 32-060 provides: "*I Liheslatura* intends to place in statute the policy of regulating gaming activities allowed by law, collecting fees and taxes that would be due from duly licensed operators, and making funds available for improvements to Guam's sporting facilities." P.L. 32-060:1. Section 2 of that law, later codified at 11 GCA § 5205, defines the "gaming activities authorized in Guam" and includes "[a]ll other limited gaming activities as

authorized pursuant to statute." P.L. 32-060:2; 11 GCA § 5205(a)(3) (as amended by P.L. 34-015:3 (June 8, 2017). Finally, P.L. 32-060 makes the following finding: "*I Liheslaturan Guåhan* finds that a variety of different gaming and licensed gaming devices and activities are currently in existence and are operated legally and regularly in Guam, including devices that have been licensed twice by the current administration." P.L. 32-060:3. While we agree with Guam Music that this language suggests the Legislature intended for certain gaming devices and activities to be legal in Guam, this language cuts against Guam Music's position regarding ratification. The law operates from the position that certain regulated gaming activities are "allowed by law" and "currently in existence and [operating] legally." P.L. 32-060:1, 3. However, a legislative ratification requires recognition that the "actions involved were unauthorized when taken." *CBS, Inc.*, 743 F.2d at 974. Public Law 32-060 suggests the opposite; we read this law as assuming these gaming devices were operated and licensed legally, which assumes the regulations providing for their operation and licensure were valid. If the Legislature believed the regulations were valid, then it could not have intended to ratify the regulations; there would be no need to do so.

[30]     A legislative ratification requires an express ratification, in "clear and unequivocal language." *Id.* Although we recognize P.L. 32-060 "intend[ed] to place in statute the policy of regulating gaming activities allowed by law," P.L. 32-060:1, we find this language ambiguous. It is not clear whether "the policy of regulating gaming activities" was intended to refer to DRT's gaming regulations specifically; once again, there are no obvious references in the law's text or legislative history to the regulations generally, or to 3 GAR § 7114(a)(5) specifically. But had the Legislature intended P.L. 32-060 to ratify the gaming regulations, it would have clarified that intention. *See Port Transp., Stevedore, & Terminal Emps. v. Guam Civil Serv. Comm'n (Port Auth. of Guam)*, 2018 Guam 18 ¶ 17 (recognizing general assumption that "a legislature knows

existing legislation and intends a continuity of policy except when it clearly and affirmatively indicates a change"); *see also* 2B Norman J. Singer & Shambie Singer, *Sutherland Statutory Construction* § 56:2 (7th ed. 2002). Accordingly, we hold that P.L. 32-060 did not ratify DRT's gaming regulations either.

## V. CONCLUSION

**[31]** We hold that the Legislature's delegation of rulemaking power to DRT was not an unconstitutional delegation of legislative authority. However, because DRT's purported gaming regulations were not adopted in compliance with the AAL as required, and because the purported gaming regulations were not ratified by subsequent legislative enactments, we **AFFIRM** the trial court's judgment that DRT's gaming regulations, and licenses issued under those regulations, are void.

|  |  |
|:---:|:---:|
| /s/ | /s/ |
| ROBERT J. TORRES | KATHERINE A. MARAMAN |
| Associate Justice | Associate Justice |

/s/
F. PHILIP CARBULLIDO
Chief Justice