**Philip P. KALODNER, Appellant,**

**v.**

**Spencer ABRAHAM, Secretary of Energy, et al., Appellees.**

**No. 01–5339.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 2002.

Decided Nov. 19, 2002.

Before: EDWARDS, RANDOLPH and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

In this case involving Emergency Petroleum Allocation Act refunds to consumers of crude oil, appellant, an attorney, seeks an award of fees under the common fund doctrine for helping third parties recover money from a government-created escrow account held in the United States Treasury. Because the government has not waived its sovereign immunity, we affirm the district court's denial of his request.

## I.

Enacted in 1973, the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. §§ 751–760h (repealed 1981), gave the federal government authority to establish and administer a program of mandatory price controls for crude oil and related petroleum products. The statute, incorporating the enforcement mechanism set out in section 209 of the Economic Stabilization Act, 12 U.S.C. § 1904 note (expired 1974), authorized the Department of Energy (DOE) to institute administrative enforcement proceedings against alleged violators of the EPAA and to obtain restitution from them. 15 U.S.C. § 754(a)(1). The Petroleum Overcharge Distribution and Restitution Act, 15 U.S.C. §§ 4501–4507, part of which remains in effect today, directs the Secretary "to identify persons who have been harmed by a violation of the EPAA regulations and to use recovered funds to make restitution [to such persons] 'to the maximum extent possible.'" *Consol. Edison Co. v. O'Leary*, 131 F.3d 1475, 1478 (Fed. Cir.1997) (quoting 15 U.S.C. § 4502). DOE determines both eligibility for restitution and the amount each person should receive according to standards set forth in

Philip P. Kalodner, appellant appearing pro se, argued the cause and filed the briefs.

Edward Himmelfarb, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief was William Kanter, Deputy Director.

10 C.F.R. pt. 205, subpt. V—the so-called Subpart V procedures.

The procedural and substantive history of this case is complex, but little of it relates to the narrow issue before us. Suffice it to say that in 1992, Cities Service Oil and Gas Corporation, the predecessor to Occidental Petroleum Corporation, agreed to settle DOE section 209 charges alleging certain violations of the EPAA. Under that settlement, Occidental agreed to make payments to a restitution fund for distribution to end users of Occidental's crude oil, to certain states, and to the United States. The restitution fund "is held in an escrow account in the [United States] Treasury." Appellee's Br. at 26.

To settle additional allegations that it violated the EPAA, Occidental entered into a separate agreement with another group of end users, clients of appellant Philip Kalodner. This included an award of $400,000 in attorney's fees to Kalodner.

Kalodner subsequently filed a claim with DOE seeking an award of attorney's fees from the fund established through DOE's settlement with Occidental. Although neither Kalodner nor his clients were parties to that settlement and although he had already received a substantial fee award, Kalodner alleges that his work on behalf of his clients benefitted the entire class of end users, entitling him to still more fees. Expressly disclaiming that he qualifies as a Subpart V claimant, Appellant's Reply at 21, Kalodner argues that he is entitled to an award pursuant to the common fund fee doctrine. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980) (recognizing that under common fund fee doctrine "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). Both DOE and the district court rejected Kalodner's claim. Kalodner appeals.

## II.

Neither the complex jurisdictional issues in this case, including whether appellate jurisdiction is with this Court or the Federal Circuit, *see Tex. Am. Oil Corp. v. United States Dep't of Energy,* 44 F.3d 1557, 1563–64 (Fed.Cir.1995), nor the merits of Kalodner's common fund claim require our attention, for Kalodner's suit is barred by sovereign immunity. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 1012–13, 140 L.Ed.2d 210 (1998) (courts must establish jurisdiction before addressing merits); *Galvan v. Fed. Prison Indus.,* 199 F.3d 461, 463 (D.C.Cir.1999) (courts may address sovereign immunity prior to other "non-merits decisions"). "The basic rule of federal sovereign immunity," the Supreme Court has explained, "is that the United States cannot be sued at all without the consent of Congress." *Block v. North Dakota,* 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983). The federal government is "immune from suit save as it consents to be sued," *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941), and "waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text," *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996).

Although arguing that this action "is against the United States only in its capacity as escrowee of funds belonging to end users found entitled to restitution," Appellant's Reply Br. at 16–17, Kalodner's common fund fee claim nevertheless implicates federal sovereign immunity for a simple reason: He seeks funds in the United States Treasury. According to the government, its sovereign immunity defense is especially strong because the United States may recover any funds that remain in the escrow account after distri-

bution to end users. *See* Statement of Modified Restitutionary Policy in Crude Oil Cases, 51 Fed.Reg. 27,899 (Aug. 4, 1986); Order Implementing Statement of Restitutionary Policy Concerning Crude Oil Overcharges, 51 Fed.Reg. 29,689–02 (Aug. 20, 1986) (directing excess funds in escrow account after disbursements have been made to be deposited in general fund of the United States Treasury). Kalodner insists that nothing will remain in the escrow account because all funds will be distributed on a pro rata basis to Occidental's end users. Appellant's Reply Br. at 14–15 (citing *Consol. Edison Co. v. Richardson*, 233 F.3d 1376, 1379 (Fed.Cir.2000) (Subpart V claimants have standing to challenge awards to other Subpart V claimants because the awards are distributed on a pro rata basis and "any increase in the size of the total consumed volume ... directly reduces the share of each claimant")). We need not resolve that debate, however, for the *sine qua non* of federal sovereign immunity is the federal government's *possession* of the money in question. The government need not have an actual interest in the funds in order to invoke the defense. *See United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577 (1947) (federal sovereign immunity precludes award of prejudgment interest based on funds held by the United States but belonging to private parties); *VGS Corp. v. United States Dep't of Energy*, 808 F.2d 842, 846 (Temp. Emer. Ct.App.1986) (for purposes of sovereign immunity, that the government has never claimed a right to the money "does not remove the obstacle presented by the *N.Y. Rayon* case").

Kalodner relies on *National Treasury Employees Union v. Nixon*, 521 F.2d 317 (D.C.Cir.1975), where we rejected a sovereign immunity defense against a claim for attorney's fees. Appellant's Reply Br. at 17. In that case, however, the funds at issue had already been distributed to private parties, so the money was no longer in the government's possession. *Nat'l Treasury Employees*, 521 F.2d at 320 ("[W]e believe that sovereign immunity does not bar the award of attorney's fees and litigation expenses against private parties merely because some incidental expense might be imposed upon the Government by such an award."). As Kalodner concedes, the funds at issue here remain in the Treasury. They are thus fully protected by sovereign immunity.

Kalodner has also failed to identify a statutory waiver of immunity that would allow him to bring his common fund fee claim. Congress has waived sovereign immunity for Subpart V claimants—parties actually injured by violations of the EPAA—by authorizing them to seek refunds from escrow accounts held by the United States Treasury and to challenge awards to other claimants. *See Goodyear Tire & Rubber Co. v. Dep't of Energy*, 118 F.3d 1531 (Fed.Cir.1997) (party allegedly injured by EPAA violation challenged DOE's denial of its claims for price refunds); *Consol. Edison Co. v. Richardson*, 233 F.3d 1376 (holding that Subpart V claimants have standing to challenge awards to other claimants). But as Kalodner concedes, he is not a Subpart V claimant nor was he injured by a violation of the EPAA. Appellant's Reply Br. at 21.

Because Kalodner's claim is barred by sovereign immunity, we affirm the district court's denial of his fee request.

*So ordered.*