# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 1, 2022         Decided May 9, 2023

No. 22-5080

STEVEN M. GREENBAUM, ON BEHALF OF HIMSELF
INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF
JUDITH (SHOSHANA) LILLIAN GREENBAUM, DECEASED, ET AL.,
APPELLANTS

v.

ISLAMIC REPUBLIC OF IRAN, ET AL.,
APPELLEES

———

Consolidated with 22-5081, 22-5083, 22-5085

———

Appeals from the United States District Court
for the District of Columbia
(No. 1:02-cv-02148)
(No. 1:03-cv-01708)
(No. 1:06-cv-00473)
(No. 1:06-cv-00745)

———

*Patrick N. Petrocelli* argued the cause for appellants. With
him on the briefs was *James L. Bernard.*

*Brian P. Hudak*, Assistant U.S. Attorney, argued the cause and filed the brief for intervenor-appellee United States of America. *Jane M. Lyons* and *Peter C. Pfaffenroth*, Assistant U.S. Attorneys, entered appearances.

Before: MILLETT and CHILDS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: The United States seized oil cargo it claims belongs to the Islamic Republic of Iran. The appellants attached the oil in order to satisfy money judgments they hold against Iran. The district court upheld the United States' claim of sovereign immunity and quashed the attachments. Because we agree that federal sovereign immunity applies, and because the appellants identify no waiver of that immunity, we affirm the judgment of the district court.

## I.    Background

### A.  The Forfeiture Proceeding

In December 2020, the United States obtained a warrant to seize oil cargo allegedly belonging to the armed forces of Iran. The oil cargo was then aboard the M/T *Achilleas*, outside U.S. waters. The owner of the *Achilleas* acknowledged the warrant and agreed to transport the oil cargo to the United States.

In the meantime, the United States filed a civil forfeiture complaint in the district court (Friedman, J.), and the clerk issued a warrant arresting the oil cargo and constructively bringing it within the Government's custody. 18 U.S.C.

§ 981(c). To avoid incurring storage costs while the forfeiture proceeding remains pending, the United States sought and received the court's permission to sell the oil before a final judgment. The net proceeds of the sale—nearly $100 million—are being held in an interest-bearing escrow account of the United States. The civil forfeiture proceeding remains pending.

## B.  The Execution Proceedings

Well before these events, the appellants had obtained money judgments in the district court (Lamberth, J.) against Iran, as permitted by the exception to the Foreign Sovereign Immunities Act (FSIA) for victims of state-sponsored terrorism. 28 U.S.C. § 1605A(a); *see also* 28 U.S.C. § 1605(a)(7) (2007). They have been trying to collect against Iran ever since.

Catching wind of the arrest of the oil cargo, the appellants sought to execute their judgments. By order of Judge Lamberth, the clerk issued writs of attachment ordering the U.S. Marshal to seize the oil cargo and directing the U.S. Attorney's Office to appear as garnishee in the execution proceedings. *See* Fed. R. Civ. P. 69(a)(1); D.C. Code §§ 16-544, 546.

## C.  The Decision of the District Court

The United States intervened and sought to quash the writs of attachment. The Government argued, among other things, that the writs were barred by federal sovereign immunity. The appellants responded by arguing that § 201(a) of the Terrorism Risk Insurance Act of 2002 (TRIA), 28 U.S.C. § 1610 (note), waives federal sovereign immunity in the present circumstances.

The district court held federal sovereign immunity applies because the United States "holds a property interest" in the proceeds from the sale of the oil. *Greenbaum v. Islamic Republic of Iran*, 588 F. Supp. 3d 77, 81 (D.D.C. 2022). It then held the TRIA is not a waiver of sovereign immunity. *Id.* at 84. Accordingly, the district court quashed the writs of attachment. This appeal followed.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 because the decision of the district court quashing the writs is final; it prevents execution and leaves the district court nothing else to decide. *See Frank v. Malone*, 126 F.2d 651, 652 (D.C. Cir. 1942) ("The Municipal Court granted the motions and quashed the attachments. Since that order prevented appellant from proceeding further, it was a final order." (footnote omitted)); *see also Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 24 F.4th 242, 254–55 (3d Cir. 2022) (noting that a post-judgment order that leaves the district court nothing else to decide is final). Because this appeal involves only questions of law, our review is de novo. *Bennett v. Islamic Republic of Iran*, 618 F.3d 19, 21 (D.C. Cir. 2010).

## II.  Analysis

We begin by considering whether federal sovereign immunity applies. We hold that it does. We end by considering whether the TRIA waives federal sovereign immunity. We hold it does not.

### A.  Federal Sovereign Immunity Applies

"[T]he *sine qua non* of federal sovereign immunity is the federal government's *possession* of the money in question. The government need not have an actual interest in the funds in

order to invoke the defense." *Kalodner v. Abraham*, 310 F.3d 767, 770 (D.C. Cir. 2002) (citing *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654 (1947)). Therefore, "sovereign immunity bars creditors from attaching or garnishing funds in the Treasury." *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 264 (1999).

Applying these precedents, we see that the writs conflict with sovereign immunity in two ways. First, as the Government argues, the writs impermissibly direct the U.S. Marshal to seize property held in a government escrow account. *Kalodner*, 310 F.3d at 770. Second, the writs name the U.S. Attorney's Office as garnishee, requiring it to appear in the execution proceedings and answer interrogatories under compulsion of a "judgment of condemnation." D.C. Code § 16-556(b). As the garnishee is one of its agencies, the United States would be liable "for the . . . credits admitted or found." *Id.* § 16-556(a); *see also Palmer v. McClelland*, 123 A.2d 357, 357 (D.C. 1956). The appellants are thus seeking monetary relief against the United States, but "[t]he judiciary may not impose monetary relief against the United States without its consent." *United States v. Waksberg*, 112 F.3d 1225, 1227 (D.C. Cir. 1997). Sovereign immunity therefore bars the writs. *Blue Fox*, 525 U.S. at 264.

**B. The Congress Has Not Waived Sovereign Immunity**

Even when federal sovereign immunity would otherwise apply, the Congress may consent to suit. The appellants argue the Congress did just that in § 201(a) of the TRIA, which provides:

> Notwithstanding any other provision of law, . . . in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section

1605A or 1605(a)(7) . . . , the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

28 U.S.C. § 1610 (note). A waiver of sovereign immunity must "be clearly discernable from the statutory text in light of traditional interpretive tools." *FAA v. Cooper*, 566 U.S. 284, 291 (2012). "Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *Id.* at 290 (citation omitted). There is an ambiguity "if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *Id.* at 290–91. Resolving ambiguities, as therefore we must, in favor of immunity, we discern no clear waiver of federal sovereign immunity in § 201(a).

## 1. The catchall notwithstanding clause does not clearly waive sovereign immunity.

The appellants argue that the introductory clause, "Notwithstanding any other provision of law . . .," in § 201(a) of the TRIA effectively waives federal sovereign immunity. Even "standing alone," they say, this clause "clearly and unequivocally waives" sovereign immunity because "[s]overeign immunity is a provision of law." The Government counters that the phrase "any other provision of law" does not clearly cover federal sovereign immunity, because that immunity is not to be found in any "provision of law." We agree.

The phrase "other provision of law" is at best ambiguous. The phrase clearly requires courts to disregard other statutory provisions that conflict with the scope of the TRIA. For example, § 1609 of the FSIA expressly grants the property of foreign states immunity from execution, but § 201(a) of the TRIA supersedes that provision insofar as it applies to the "blocked asset" of a "terrorist party," as those terms are defined in § 201(d) of the TRIA. *See Rubin v. Islamic Republic of Iran,* 138 S. Ct. 816, 825 (2018) (citing the TRIA as an example of a statute that "expressly" divests "a foreign state or property of immunity in relation to terrorism-related judgments"); *see also Levinson v. Kuwait Fin. House (Malaysia) Berhad*, 44 F.4th 91, 96 (2d Cir. 2022) (noting the TRIA provides a limited "exception" to this statutory immunity). Although the phrase "provision of law" may in some contexts be best read to displace other forms of law, such as a common law doctrine, it does not do so clearly enough to waive federal sovereign immunity.

"When a term goes undefined in a statute, we give the term its ordinary meaning." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012). To determine the ordinary meaning of a legal term, we may look to contemporaneous dictionaries. *See id.* at 566–68. The TRIA was enacted in 2002. The eighth edition of Black's Law Dictionary, published in 2004, defines "provision" as a "clause in a statute, contract, or other legal instrument." Federal sovereign immunity is not such an "instrument," which Black's further defines as a "written legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." *See also* Black's Law Dictionary 998 (7th ed. 1999) ("A stipulation or qualification, esp. a clause in a document or agreement"). Other dictionaries are consistent with Black's. *See* Merriam Webster's Dictionary of Law 394 (1996) (defining 'provision' as "a stipulation (as a clause in a

statute or contract) made beforehand"); *accord* American Heritage Dictionary of the English Language 666 (3rd ed. 1994) ("A stipulation or qualification, esp., a clause in a document").

So understood, referring to "any other provision of law" would be at best an abstruse way to waive federal sovereign immunity, and the sovereign immunity canon requires clarity. We must therefore read the term "provision" to exclude the doctrine of federal sovereign immunity.

Our conclusion is reinforced by "notwithstanding" clauses in other statutes. First, the Congress knows how to enact a notwithstanding clause that clearly waives or abrogates sovereign immunity. It has done so in the Bankruptcy Code. *See* 11 U.S.C. § 106(a) ("Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit . . ."); *id.* § 106(c) ("Notwithstanding any assertion of sovereign immunity by a governmental unit . . ."). Second, the Congress has recognized that the phrase "other provision of law" does not clearly extend beyond statutory law by including in the Immigration and Naturalization Act a parenthetical expressly giving it a more expansive sweep: "Notwithstanding any other provision of law (statutory or nonstatutory), . . . )." 8 U.S.C. § 1252(a)(2)(A), (a)(2)(B), (a)(2)(C), (a)(4), (a)(5). This parenthetical would be unnecessary if "other provision of law" clearly applied beyond statutory law.

Setting aside this ambiguity in the phrase "provision of law," "the 'notwithstanding' clause applies only when some 'other provision of law' conflicts with" the scope of the TRIA. *Smith ex rel. Est. of Smith v. Fed. Rsrv. Bank of New York*, 346 F.3d 264, 271 (2d Cir. 2003). The clause "does not define the scope of" the TRIA. *Kucana v. Holder*, 558 U.S. 233, 238 n.1

(2010). It merely signals that the TRIA prevails over conflicting provisions of law. *Id.* The reach of the notwithstanding clause is therefore necessarily determined by the substantive text that follows it, and the appellants' argument that the notwithstanding clause "standing alone" could waive federal sovereign immunity is but a solecism. As we explain in more detail below, the TRIA does not expressly mention the United States, its sovereign immunity, or its susceptibility to suit under the statute. Because the TRIA has nothing express to say about federal sovereign immunity, the notwithstanding clause cannot aid the appellants.

We need not decide whether the phrase "provision of law" sometimes includes, as the appellants claim, federal or state "common law doctrines." *Citing King v. Dole*, 782 F.2d 274, 275–76 (1986); *D.C. v. Brady*, 288 F.2d 108, 110 (1960). Federal sovereign immunity is no ordinary rule of common law. Federal sovereign immunity reinforces the separation of powers. It protects the Congress's power of the purse, Art. I, § 9, cl. 7, under which "the payment of money from the Treasury must be authorized by a statute." *Off. of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 424 (1990). By barring suits for money damages without the consent of the Congress, sovereign immunity precludes actions to "divert the public money from its legitimate and appropriate object." *Buchanan v. Alexander*, 45 U.S. 20, 20 (1846). Just as the president cannot spend money without an appropriation, the president cannot expose the fisc to liability by waiving federal sovereign immunity. Only the Congress can do that. *Dep't of Army v. FLRA*, 56 F.3d 273, 275 (D.C. Cir. 1995).

Because federal sovereign immunity keeps fiscal decisions in the democratically accountable political branches, where they belong, we should not infer that a text best read to displace conflicting federal or state common law also waives, much less

clearly waives, federal sovereign immunity. After all, displacing federal common law does not take much clarity. *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 423 (2011) ("Legislative displacement of federal common law does not require the same sort of evidence of a clear and manifest congressional purpose demanded for preemption of state law." (cleaned up)). Even federal preemption of state common law may rest upon an implication. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 621 (2011); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 886 (2000). A waiver of federal sovereign immunity may not. *Lane v. Pena*, 518 U.S. 187, 192 (1996).

We therefore have no occasion to decide whether the notwithstanding clause in the TRIA—or in any of the 2,170 identical notwithstanding clauses scattered across the U.S. Code[*]—is best read in some cases as an instruction to set aside conflicting "common law doctrines." *Cf. Brown v. United Airlines, Inc.*, 720 F.3d 60, 67 (1st Cir. 2013) ("The word 'provision,' though inexact, is elastic enough to encompass common law."). We hold only that the notwithstanding clause in the TRIA does not, "standing alone," as the appellants would have it, clearly waive federal sovereign immunity, and so we read the ambiguous clause in favor of immunity.

### 2. The remainder of the text does not waive federal sovereign immunity.

The appellants next argue the TRIA, read as a whole, makes the waiver of federal sovereign immunity clear, either by clarifying the intended scope of the notwithstanding clause, or by independently waiving federal sovereign immunity.

---

[*] *See* BYU Law, Corpus of the Current US Code (COCUSC), Version 6.1.0 (search for "Notwithstanding any other provision of law" yields 2,170 results), *available via* https://lawcorpus.byu.edu/.

11

Here, the appellants rely upon the definition of "blocked asset" in TRIA § 201(d)(2). A "blocked asset" is defined to include "any asset seized or frozen" by the United States under either of two different sanctions laws. TRIA § 201(d)(2)(A). The appellants argue the TRIA would be impossible to follow in "every case" and against "any asset seized or frozen" as § 201(a) of the TRIA requires if the United States could assert federal sovereign immunity. That is particularly true in cases involving the Government's physical seizure of terrorist assets, where federal sovereign immunity would seem always to apply. Therefore, the appellants reason, the TRIA must waive federal sovereign immunity.

A drawn-out implication from the definition of blocked asset falls far short of the "unmistakable statutory expression" required for a waiver of federal sovereign immunity. *Cooper*, 566 U.S. at 291. From start to finish, § 201(a) is about cases brought "against a terrorist party." There is no indication that it also covers execution against the United States.

We find the text ambiguous, not clear. Even when a court is confronted with a statute—clearly a "provision of law"—determining the scope of TRIA § 201, and the extent to which it comes into conflict with another statute, has proven difficult. Courts have often rejected an expansive reading of the text of the TRIA, similar to the one proposed by the appellants here, as displacing anything that stands in the way of a particular plaintiff's collecting. *See, e.g.*, *Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 385–86 (2009) (holding that § 201 of the TRIA does not conflict with a "relinquishment provision" added by the same legislation); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 689 (5th Cir. 2013) (holding that "§ 201 of the TRIA does not trump the criminal forfeiture provisions of 21 U.S.C. § 853"); *Stansell v.*

*Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 730 (11th Cir. 2014) (holding "TRIA § 201 does not preempt Florida law, and judgment creditors seeking to satisfy judgments under it must follow the notice requirements of Florida law"); *Smith*, 346 F.3d at 271 (declining to hold the TRIA conflicts with "the President's [International Emergency Economic Powers Act] confiscation authority as it pertains to blocked terrorist assets"). We too reject this overbroad reading of the text.

The appellants also argue that if the TRIA does not waive federal sovereign immunity, then the president's power to waive the requirements of § 201(a) in paragraph (b) of the TRIA is superfluous. Subject to some exceptions, paragraph (b) provides:

> [T]he President may waive the requirements of subsection (a) in connection with (and prior to the enforcement of) any judicial order directing attachment in aid of execution or execution against any property subject to the Vienna Convention on Diplomatic Relations or the Vienna Convention on Consular Relations.

This provision is not superfluous: The president may use this authority to protect foreign diplomatic or consular property from execution whenever the United States cannot raise the defense of federal sovereign immunity. In those cases, the president may waive the TRIA, thereby restoring the immunity of the property under the FSIA. 28 U.S.C. § 1609.

The appellants argue there will be no such cases, but their argument is premised upon a misunderstanding of federal sovereign immunity. They assume that comprehensive blocking regulations under U.S. sanctions laws are enough for the United States to raise a meritorious defense of federal

sovereign immunity. Possession, however, not regulation, is, as we said above, "the *sine qua non* of federal sovereign immunity." *Kalodner*, 310 F.3d at 770. Foreign diplomatic or consular assets need not be in the Government's possession to be blocked. Therefore, blocked assets may not always be subject to the defense of federal sovereign immunity, and the appellants' surplusage argument fails.

The appellants finally argue that the remedial purpose and legislative history of the TRIA show the Congress intended to waive federal sovereign immunity, quoting a floor statement by Senator Harkin that asserts as much. 148 Cong. Rec. S11524-01, S11528 (2002). Because "[l]egislative history cannot supply a waiver that is not clearly evident from the language of the statute," this argument fails. *Cooper*, 566 U.S. at 290.

### III. Conclusion

For the foregoing reasons, we hold (1) federal sovereign immunity prevents the attachment and garnishment of oil proceeds in a bank account of the United States and (2) the TRIA does not waive that immunity. Because sovereign immunity prevents the appellants from taking further steps to seize the proceeds from the United States' sale of the contested oil, we have no occasion to reach the alternative grounds for affirmance raised by the Government. The judgment of the district court is, therefore,

*Affirmed*.