# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 27, 2023     Decided April 26, 2024

No. 22-7134

JOHN DOES 1-7,
APPELLANTS

v.

TALIBAN, ET AL.,
APPELLEES,

INTERNATIONAL MONETARY FUND; INTERNATIONAL BANK
FOR RECONSTRUCTION AND DEVELOPMENT,
GARNISHEE-APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-mc-00110)

———

*John Thornton* argued the cause and filed the briefs for appellants.

*Ginger D. Anders* argued the cause for garnishee-appellee International Bank for Reconstruction and Development. With her on the brief was *Sarah E. Wiener*.

*James R. Newland, Jr.* argued the cause for garnishee-appellee International Monetary Fund.  With him on the brief were *Kiran Aftab Seldon* and *Owen R. Wolfe*.

Before:  SRINIVASAN, *Chief Judge*, and MILLETT and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  In 2020, seven victims of a 2016 terrorist bombing in Afghanistan obtained multi-million-dollar default judgments against the Taliban, Al-Qaeda, and the Haqqani Network.  Following the Taliban's 2021 takeover of Afghanistan, those seven victims, suing as John Doe plaintiffs ("John Does"), sought to attach assets presently held by the International Monetary Fund and the International Bank for Reconstruction and Development (commonly known as the "World Bank").  The John Does contend that these assets are subject to execution because, in their view, they belong to the Afghan government or the central bank of Afghanistan, and the Taliban has become the *de facto* Afghan government and the Afghan central bank its "instrumentality."

We cannot address the merits of the John Does' claims. Congress has accorded the Fund and the World Bank statutory immunity from suit in United States courts under the International Organizations Immunities Act and Foreign Sovereign Immunities Act.  Because our hands are jurisdictionally tied in this case, we affirm the district court's order quashing the John Does' writs of execution and dismissing their attachment proceeding.

3

**I**

**A**

The Foreign Sovereign Immunities Act ("FSIA") "confers on foreign states two kinds of immunity." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 142 (2014). First, it provides that "foreign state[s] shall be immune from *the jurisdiction* of the courts of the United States and of the States" unless their conduct falls within one of the statutorily enumerated exceptions. 28 U.S.C. § 1604 (emphasis added); *see id.* §§ 1605–1607 (enumerating exceptions). We refer to this type of immunity as "jurisdictional immunity." Second, even when jurisdiction over a foreign sovereign is established, the FSIA separately protects that sovereign's "property in the United States * * * from attachment, arrest, and execution," except to the extent an exception applies. *Id.* § 1609; *see id.* §§ 1610–1611 (enumerating exceptions). This type of immunity is often referred to as "execution immunity."

This distinction between foreign states' jurisdictional and execution immunity is grounded in international law. *See* RESTATEMENT (FOURTH) OF THE LAW OF FOREIGN RELATIONS OF THE UNITED STATES § 453(6)(b) (Am. L. Inst. 2018) ("Under international law * * * a waiver of immunity from suit does not imply the waiver of immunity from attachment of property, and a waiver of immunity from attachment of property does not imply a waiver of immunity from suit.").[1]

---

[1] The prior Restatements are to the same effect, demonstrating the stability of the distinction over time. *See* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 456(1)(b) (Am. L. Inst. 1987) ("Under international law * * * a state may waive its immunity from attachment of its property or from execution against its property, but a waiver of immunity from suit does not imply a waiver of immunity from attachment of property, and a waiver of

As a result of the FSIA's dual immunities, parties seeking judicial enforcement of an award against a foreign state face two hurdles:  They must "establish *both* that the foreign state is not immune from suit *and* that the property to be attached or executed against is not immune" from execution.  *TIG Ins. Co. v. Republic of Argentina*, 967 F.3d 778, 781 (D.C. Cir. 2020) (emphases added).

The World Bank and Fund are, of course, not foreign states.  But because they are presidentially designated international organizations, the International Organizations Immunities Act ("IOIA") affords them the "same immunity from suit and every form of judicial process as is enjoyed by foreign governments" under the FSIA.  22 U.S.C. § 288a(b); *see* Exec. Order No. 9751, 11 Fed. Reg. 7713 (July 13, 1946) (designating the World Bank and Fund as protected "international organizations").  As a result, the World Bank and Fund enjoy the same immunities subject to the same exceptions that foreign governments have under the FSIA.  *See Jam v. International Fin. Corp.*, 139 S. Ct. 759, 772 (2019) (The FSIA's terms "govern[] the immunity of international

---

immunity from attachment of property does not imply a waiver of immunity from suit."); RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 70(3) (Am. L. Inst. 1965) ("A waiver of immunity from suit or from a counterclaim does not, in the absence of a clear indication to the contrary, imply waiver of immunity from execution.").  The same distinction is reflected in longstanding caselaw.  *See, e.g.*, *Flota Maritima Browning de Cuba v. Motor Vessel Ciudad de la Habana*, 335 F.2d 619, 626 (4th Cir. 1964) ("A distinction has been drawn between jurisdictional immunity and immunity from execution of the property of a sovereign, and waiver of the former is not necessarily a waiver of the latter."); *Dexter & Carpenter, Inc. v. Kunglig Jarnvagsstyrelsen*, 43 F.2d 705, 708 (2d Cir. 1930) (holding that a waiver of jurisdictional immunity did not imply a waiver of execution immunity).

organizations" under the IOIA.). As relevant here, that means that the Fund and the World Bank enjoy both jurisdictional and execution immunity.[2]

Against that backdrop, Congress in 2002 passed the Terrorism Risk Insurance Act ("TRIA") to make it easier for those who have obtained valid judgments against terrorists and their affiliates to actually recover damages. *See* Pub. L. No. 107-297, 116 Stat. 2322 (Nov. 26, 2002), codified at note following 28 U.S.C. § 1610. Section 201(a) of the TRIA provides:

> Notwithstanding any other provision of law, * * * in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, * * * the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

---

[2] The Fund's and World Bank's articles of incorporation each establish additional, distinct immunities that Congress has enforced by statute. The World Bank's articles make it immune from lawsuits "brought by members or persons acting for or deriving claims from members[.]" Bank Articles, Art. VII § 3; *see* 22 U.S.C. § 286h (incorporating the World Bank's articles into U.S. law). The Fund's articles provide that the Fund, "its property, and its assets * * * shall enjoy immunity from every form of judicial process except to the extent that [the Fund] expressly waives its immunity for the purpose of any proceedings or by the terms of any contract." Fund Articles, Art. IX § 3; *see* 22 U.S.C. § 286h (incorporating relevant articles into U.S. law).

6

28 U.S.C. § 1610 note.[3]

**B**

In January 2016, a suicide bomber detonated a truck loaded with explosives in a residential compound for international workers in Kabul, Afghanistan.  Compl. ¶¶ 36–38, *John Does v. Taliban*, No. 20-cv-00605 (N.D. Tex. Mar. 20, 2020), ECF No. 1.  Among those injured by the resulting blast were the seven John Does, who were working there as State Department civilian contractors.  Compl. ¶¶ 1–7.  The John Does subsequently sued the Taliban, Al-Qaeda, and the Haqqani Network, and each obtained multi-million-dollar default judgments that collectively totaled almost $140 million.  Final Default Judgment, *John Does v. Taliban*, No. 20-cv-00605 (N.D. Tex. Nov. 5, 2020), ECF No. 22.

In August 2021, the Taliban seized control of Afghanistan as well as several governmental entities, including the Afghan central bank.  *John Does 1 Through 7*, No. 21-mc-00110, 2022 WL 4103853, at *1 (D.D.C. Sept. 8, 2022).  The John Does subsequently initiated this post-judgment collection action against the World Bank and the Fund.  They allege that the World Bank and the Fund hold assets belonging to Afghanistan or to its central bank.  *Id.*  The John Does contend specifically that the Taliban has become the *de facto* government of Afghanistan and its central bank has become an "instrumentality" of the Taliban, so that any "blocked assets" belonging to either constitute "the blocked assets of [a] terrorist

---

[3] At the time of the TRIA's enactment, 28 U.S.C. § 1605(a)(7) contained the FSIA's exception to jurisdictional immunity for state sponsors of terrorism.  In 2008, Congress amended and replaced that provision with a more expansive terrorism exception codified at 28 U.S.C. § 1605A.  *See* National Defense Authorization Act for Fiscal Year 2008, § 1083, Pub. L. 110-181, 122 Stat. 3, 338–344.

party * * * subject to execution" under Section 201(a) of the TRIA. 28 U.S.C. § 1610 note.

The John Does registered their default judgment with the United States District Court for the District of Columbia, and the Clerk of the Court then issued writs of attachment to both the World Bank and the Fund. *John Does 1 Through 7*, 2022 WL 4103853, at *1. After trying and failing to serve the World Bank and Fund in the traditional ways, the John Does' process server ultimately left the writs at the feet of security guards at each entity's Washington, D.C. office. *Id.* Following the World Bank's and Fund's refusals to answer interrogatories appended to those writs, the John Does moved in the district court for final judgment. *Id.* The World Bank and Fund responded and moved to quash the writs on several grounds, including that they were immune from suit and so not subject to the district court's jurisdiction. *Id.* at *2.

The district court granted the World Bank's and Fund's motions to quash. *John Does 1 Through 7*, 2022 WL 4103853, at *4. The court found the TRIA inapplicable in this case. *Id.* at *3–4. The court first expressed "serious reason to doubt that the funds [the John Does sought to recover] belong to Afghanistan," which in itself would make the TRIA inapplicable. *Id.* at *3. The district court added that, even if the assets belonged to Afghanistan, it could not "recognize an ownership claim by the Taliban" to Afghan assets since "[t]he United States has not recognized the Taliban as the legitimate government of Afghanistan." *Id.* For those reasons, the John Does failed to "show[] that the assets at issue fall under the TRIA," and so they "ha[d] not shown that an exception to the Fund and the World Bank's immunity applies[.]" *Id.* at *4. On that basis, the district court found that it lacked jurisdiction in the case and granted the motions to quash. *Id.*

8

## II

The district court held that the TRIA was inapplicable and that it therefore lacked subject matter jurisdiction. We have jurisdiction to review the district court's judgment under 28 U.S.C. § 1291.

We review questions of law *de novo*, including the district court's conclusions about its jurisdiction and the World Bank's and Fund's immunities. *Nyambal v. International Monetary Fund*, 772 F.3d 277, 280 (D.C. Cir. 2014). We review factual findings for clear error. *Id.*

## III

We cannot address the merits of the John Does' claims unless we first ensure that we have jurisdiction over the World Bank and the Fund. Because we conclude that their statutory immunity remains intact, the district court properly entered judgment dismissing the case against both entities. *See Zuza v. Office of the High Representative*, 857 F.3d 935, 938 (D.C. Cir. 2017) (explaining that properly asserted immunity under the IOIA "[r]emov[es] judicial power to adjudicate a case [and] compels its dismissal").

The starting point under the IOIA and its incorporated FSIA provisions is that the World Bank and Fund are immune from suit in the courts of the United States. 22 U.S.C. § 288a(b); 28 U.S.C. § 1604; *see Jam*, 139 S. Ct. at 772. For the John Does' action to proceed, then, they must identify some exception to or abrogation of that immunity. *See TIG Ins. Co.*, 967 F.3d at 781. The FSIA itself includes varied exceptions to jurisdictional immunity, including exceptions applicable to state sponsors of terror. *See* 28 U.S.C. § 1605A; *see also id*.

§§ 1605–1607.  But the John Does do not argue that any of those exceptions apply in this case.

Instead, the John Does rest their entire jurisdictional case on Section 201(a) of the TRIA.  In the John Does' view, that provision gives this court both subject matter jurisdiction over this action against the World Bank and Fund, and the authority to execute against any Afghan state assets they currently hold.

By way of reminder, Section 201(a) provides:

Notwithstanding any other provision of law, * * * in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under section 1605(a)(7) of title 28, * * * the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

28 U.S.C. § 1610 note.

That provision does not speak to the World Bank's or Fund's jurisdictional immunity from suit.  Rather, Section 201(a), "[f]rom start to finish," concerns the rights of persons who already have in hand valid judgments against terrorist parties to recover assets in satisfaction of those judgments. *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428, 434 (D.C. Cir. 2023); *see Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366, 374 (2009) (The TRIA "permit[s] a person with a terrorism-related judgment to attach an asset *of the responsible 'terrorist'*

*state* to satisfy the judgment[.]") (emphasis added); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 50 (2d Cir. 2010) ("The purpose of [Section 201(a)] is to deal comprehensively with the problem of *enforcement of judgments* issued to victims of terrorism in any U.S. court by enabling them *to satisfy such judgments* from the frozen assets of terrorist parties.") (quoting 148 Cong. Rec. S11528 (daily ed. Nov. 19, 2002) (statement of Sen. Harkin)) (emphases added).

As a result, asset recovery under Section 201(a) can come only from parties over whom subject matter jurisdiction has already been established. Said another way, to execute on a judgment against an entity ordinarily protected by FSIA immunity, the plaintiff must show *both* (1) subject matter jurisdiction over—*i.e.*, an abrogation of immunity for—the defendant holding the assets, and (2) statutory authority to execute the judgment against the assets. *See TIG Ins. Co.*, 967 F.3d at 781. Section 201(a) speaks only to the latter. And the John Does have identified no jurisdictional basis in this case for the former.[4]

---

[4] This case is perhaps unusual in that the parties asserting immunity—the World Bank and Fund—are not the named defendants in the underlying suit. Rather, they are third-party garnishees that, the John Does allege, control assets belonging to the defendants or their instrumentality. In a typical FSIA or IOIA case where plaintiffs seek a judgment against a foreign state or international organization, the plaintiffs would have had to establish jurisdiction over that state or organization in the underlying suit before obtaining a judgment. *See* 22 U.S.C. § 288a(b); 28 U.S.C. § 1604. Subsequent garnishment proceedings—say, against a private bank—often do not pose the new questions of sovereign immunity that have arisen in this case.

**A**

Nothing in the text of Section 201(a) mentions, let alone abrogates, foreign sovereign or organizational immunity. The statute does not employ any "'clear' jurisdictional language[,]" or even mention jurisdiction. *Gonzalez v. Thaler*, 565 U.S. 134, 142 (2012); *cf. id.* at 142–143 (requiring a "clear[] statement" before finding that an exhaustion requirement is jurisdictional). Nor does it reference "immunity" or any of the FSIA's exceptions to sovereign immunity.

Instead, Section 201(a) talks exclusively about post-judgment execution proceedings. Yet such *post-judgment* proceedings necessarily presuppose a valid judgment arising out of a proper exercise of jurisdiction over the defendant against whom the judgment was obtained. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established *as a threshold matter* 'springs from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (formatting modified) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Section 201(a) says nothing about creating jurisdiction in the first instance, whether over the defendants themselves or over third parties alleged to hold the defendants' assets.

The absence of any jurisdictional-immunity hook in Section 201(a) largely closes the door on the John Does' argument that the statute provides a basis for proceeding in court against the World Bank and Fund in the first place. That is because the FSIA, which governs the World Bank's and Fund's immunity from suit, *see* 22 U.S.C. § 288a(b), provides that "foreign state[s] shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607" of the FSIA, 28 U.S.C.

§ 1604; *see id.* §§ 1605–1607. Those statutory provisions comprise the "*sole basis* for obtaining jurisdiction over" the World Bank and Fund in United States courts. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (emphasis added); *see Samantar v. Yousuf*, 560 U.S. 305, 313–314 (2010) ("[I]f a defendant is a 'foreign state' within the meaning of the [FSIA], then the defendant is immune from jurisdiction *unless* one of the exceptions in the [FSIA] applies.") (emphasis added).

Notably, each of the FSIA's exceptions to immunity speaks in explicit jurisdictional terms—enumerating those circumstances in which "[a] foreign state shall not be immune from *the jurisdiction* of courts of the United States or of the States[.]" 28 U.S.C. §§ 1605(a), 1605A(a)(1) (emphasis added). Given the FSIA's comprehensive and explicit regulation of jurisdiction over foreign sovereigns, we cannot assume that Congress abrogated these sovereigns' immunity from suit through other statutes without mentioning jurisdiction or their immunity expressly. *Cf. Samantar*, 560 U.S. at 317 ("Drawing meaning from silence is particularly inappropriate when Congress has shown that it knows how to address an issue in express terms.") (formatting modified) (quoting *Kimbrough v. United States*, 552 U.S. 85, 103 (2007)).

At most, Section 201(a) contains one veiled cross-reference to jurisdiction. But it hurts rather than helps the John Does. Specifically, Section 201(a) applies "in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or *for which a terrorist party is not immune*" under 28 U.S.C. § 1605A. 28 U.S.C. § 1610 note (emphasis added). For its part, Section 1605A provides that "[a] foreign state shall not be immune from the jurisdiction of [U.S.] courts" for certain claims based on acts of terrorism when the state has been designated a state

sponsor of terrorism by the Secretary of State. *Id.* § 1605A(a)(1); *see id.* § 1605A(a)(2). The cross-reference textually confirms that, while Section 201(a) of the TRIA applies to foreign states that qualify as "terrorist part[ies]" under 28 U.S.C. § 1605A, it does so only when those foreign states *already* have lost their jurisdictional immunity either through the FSIA's terrorism exception or some other route that allowed the lawful entry of judgment against them (such as the foreign state's own waiver of its immunity).

The John Does' theory that the TRIA by its own force pierces foreign sovereigns' jurisdictional immunity is at odds, then, with Congress's express identification of a class of foreign sovereigns to which the TRIA should apply: those whose jurisdictional immunity has already been forfeited under 28 U.S.C. § 1605A.

The John Does' reading also would nullify the role that the FSIA accords the Executive Branch in deciding which foreign states may be held liable for acts of terrorism. The FSIA's terrorism exception applies only if "the foreign state was designated as a state sponsor of terrorism at the time the [terrorist] act * * * occurred, or was so designated as a result of such act" by the Secretary of State. 28 U.S.C. § 1605A(a)(2)(A)(i)(I). This designation provision allows the Executive Branch to regulate if and when a foreign sovereign may be haled into American courts to answer terrorism allegations. *See also* 28 U.S.C. § 1610 note (defining "'terrorist party' [to] mean[] a terrorist, a terrorist organization[,] * * * or a foreign state *designated as a state sponsor of terrorism*" by the Executive) (emphasis added); *Owens v. Republic of Sudan*, 531 F.3d 884, 889–893 (D.C. Cir. 2008) (situating the FSIA's delegation of authority to designate state sponsors of terrorism in the President's foreign-relations powers).

Yet the John Does argue that, even absent such an Executive-Branch designation, foreign sovereigns or international organizations may be brought before United States courts to answer for acts of terrorism under the TRIA so long as the sought-after assets are subject to the statute. But that theory ignores Congress's explicit choice—made not once but twice in the TRIA itself—to emphasize the importance of an affirmative designation by the Executive Branch *before* a foreign sovereign may be haled into federal court for acts of terrorism. Reading Section 201(a) to provide an independent basis for abrogating foreign states' jurisdictional immunity as to terrorism-related judgments—with or without any state-sponsor-of-terrorism designation—would leave those provisions no work to do.

**B**

The John Does lean heavily on Section 201(a)'s prefatory clause, which clarifies that Section 201(a) should apply "[n]otwithstanding any other provision of law[.]" 28 U.S.C. § 1610 note. They reason that the "notwithstanding" clause itself abrogates the World Bank's and Fund's statutory immunity from suit.

We rejected essentially the same argument in *Greenbaum v. Islamic Republic of Iran*, 67 F.4th 428 (D.C. Cir. 2023). There, plaintiffs sought to recover Iranian assets being held by the United States. *Id.* at 430. The United States' sovereign immunity ordinarily would block any such action. *Id.* at 431. But the *Greenbaum* plaintiffs argued that, so long as they sought "blocked assets" subject to the TRIA, the TRIA's "notwithstanding" clause erased that immunity barrier. *Id.* at 432.

15

We held that the "notwithstanding" clause in Section 201(a) was too indirect of a formulation to provide the needed clarity to abrogate sovereign immunity. *Greenbaum*, 67 F.4th at 432–434. Instead, we held that the function of the notwithstanding clause is to signal that the TRIA prevails over provisions of law that conflict with the substantive scope of the TRIA. *Id.* at 433. Said another way, "[t]he reach of the notwithstanding clause is * * * necessarily determined by the substantive text that follows it[.]" *Id.* And because that substantive text "has nothing express to say about * * * sovereign immunity," "the notwithstanding clause cannot aid" the John Does. *Id*.

Instead, the TRIA's substantive text clears away execution-specific barriers standing between a judgment creditor and a terrorist party's assets. Most obviously, since foreign states enjoy both jurisdictional and execution immunity, Section 201(a) clears away *execution immunity* over a foreign state's "blocked assets" where that foreign state is already "not immune"—*i.e.*, is already subject to the court's jurisdiction—under 28 U.S.C. § 1605A.

For example, the FSIA separately contains an exception to execution immunity for frozen assets of foreign state sponsors of terrorism. 28 U.S.C. § 1610(f)(1)(A). But the President "may waive" that exception after determining that a waiver would be "in the interest of national security." *Id.* § 1610(f)(3). The TRIA's notwithstanding clause "eliminate[d] the effect of any Presidential waiver issued prior to the date of enactment purporting to bar or restrict enforcement of such judgments[.]" H.R. Rep. No. 779, 107th Cong., 2d Sess. 27 (2002) (Conf. Rep.); *see Elahi*, 556 U.S. at 386 (considering the conference report's discussion of Section 201(a)'s relation to presidential-waiver authority). Section 201(a)'s notwithstanding clause, in short, overrides barriers to *execution*, such as execution

immunity and presidential waivers reinstating such immunity. It does not speak to the predicate question of jurisdictional immunity over a defendant or third-party garnishee.

Nor is this court at liberty to construe any ambiguity in the notwithstanding clause to open the jurisdictional door to suing foreign states. The FSIA is the "sole" route to subject matter jurisdiction over sovereign nations and, by virtue of the IOIA, international organizations. *Amerada Hess*, 488 U.S. at 434. If abrogation of immunity is to occur through another route, that decision must be made not by judicial inference, but by the Political Branches that are constitutionally charged with conducting foreign relations and making the sensitive diplomatic and national-security judgments that pervade waivers of foreign sovereign immunity. *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053, 1062 (D.C. Cir. 2024) ("The courts, in other words, should not open the door to litigation against foreign governments that the Political Branches have not clearly authorized."); *see Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) (applying presumption against extraterritoriality in part to "ensure that the Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches"). Such delicate and difficult judgments about international relations fall beyond the judicial ken. *Borochov*, 94 F.4th at 1062; *see Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 5 (2015) (Certain "difficult and complex [questions] in international affairs * * * are committed to the Legislature and the Executive, not the Judiciary."). So unless and until Congress plainly says otherwise, any statutory ambiguity concerning a waiver of foreign immunity outside the FSIA must be resolved in favor of its preservation.

## C

We do not stand alone in reading Section 201(a) to do no more and no less than its text provides—that is, to clear execution-related barriers to recovery against defendants whose immunity from suit has already been lost. The Supreme Court took the same tack in *Ministry of Defense & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009). There, the Court rejected the argument that Section 201(a) displaces a provision in the Victims Protection Act that compensates victims with terrorism-related judgments against Iran as long as they agree to relinquish any further claims. *Id.* at 385–386; *see* Victims of Trafficking and Violence Protection Act of 2000, § 2002(d)(5)(B), as added by TRIA § 201(c)(4), 116 Stat. 2339, 28 U.S.C. § 1610 note. Since Section 201(a) could have allowed the victim to execute against Iran's "blocked assets" but for his prior relinquishment of claims, Elahi argued that the "notwithstanding" clause displaced that relinquishment requirement and reinstated his claims as to assets otherwise recoverable under the TRIA. *Elahi*, 556 U.S. at 385.

The Supreme Court rejected Elahi's argument, explaining that "Congress could not have intended the [notwithstanding clause] to narrow so dramatically an important provision [of the Victims Protection Act] that it inserted in the same statute." *Elahi*, 556 U.S. at 386. The Court also "point[ed] out that the [legislative] history suggests that Congress placed the 'notwithstanding' clause in § 201(a) * * * to eliminate the effect of any Presidential waiver issued under 28 U.S.C. § 1610(f)[.]" *Id.*; *see* H.R. Rep. No. 779, *supra*, at 27.

Other courts have likewise "rejected an expansive reading of the text of the TRIA * * * as displacing anything that stands in the way of a particular plaintiff's collecting." *Greenbaum*,

67 F.4th at 434; *see id.* at 434–435 (collecting cases); *Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 729–730 (11th Cir. 2014) (reasoning that Section 201(a)'s notwithstanding clause does not displace "Florida's requirements that owners of property being garnished or executed against are entitled to notice"); *Smith ex rel. Estate of Smith v. Federal Reserve Bank of N.Y.*, 346 F.3d 264, 271–272 (2d Cir. 2003) (concluding that the TRIA's notwithstanding clause does not alter President's separate authority to confiscate certain assets); *United States v. Holy Land Found. for Relief & Dev.*, 722 F.3d 677, 688 (5th Cir. 2013) (rejecting the "sweeping assertion * * * that the [TRIA's] 'notwithstanding' clause trumps any other law that has the incidental effect of removing funds from the reach of judgment creditors").

The Supreme Court's and other courts' reading of Section 201(a) reinforces our holding that the notwithstanding clause addresses execution-related barriers to enforcing judgments, and nothing further.

**D**

**1**

The John Does point to decisions of the Second and Ninth Circuits that have read Section 201(a) to provide a basis for jurisdiction over a state sponsor of terrorism's "agenc[ies] or instrumentalit[ies]." 28 U.S.C. § 1610 note; *see Weinstein*, 609 F.3d at 49; *Bennett v. Islamic Republic of Iran*, 825 F.3d 949, 958 (9th Cir. 2016), abrogated on other grounds by *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018). Since the FSIA defines the term "foreign state" to include state agencies and instrumentalities, *see* 28 U.S.C. § 1603(a), a state's agency

or instrumentality ordinarily enjoys its own jurisdictional immunity, just as the parent state does, *see id.* § 1604.[5]

Accordingly, for Section 201(a) to create jurisdiction over a state's agency or instrumentality, it must do so "notwithstanding" that entity's jurisdictional immunity. On that basis, the John Does argue that the Second and Ninth Circuits' readings of Section 201(a) would abrogate jurisdictional immunity in this case. John Does Reply Br. 15–19.

That is not correct. In both *Weinstein* and *Bennett*, plaintiffs with valid judgments against Iran sought to enforce those judgments against Bank Melli—an entity wholly owned by Iran and "undisputed[ly] * * * an instrumentality of Iran under the FSIA." *Bennett*, 825 F.3d at 957; *see Weinstein*, 609 F.3d at 46–47. The issue in those cases was whether Bank Melli, which was not named in the plaintiffs' judgments, was immune from jurisdiction. *See Weinstein*, 609 F.3d at 48; *Bennett*, 825 F.3d at 958.

---

[5] Because the FSIA treats the jurisdictional immunity of foreign states and of their agencies and instrumentalities as separate, the abrogation of a foreign state's jurisdictional immunity does not itself allow for jurisdiction over its agencies and instrumentalities (or vice versa). *See, e.g.*, 28 U.S.C. § 1605(a)(3) (separately discussing property used "in connection with a commercial activity carried on in the United States by the foreign state" and property "owned or operated by an agency or instrumentality of the foreign state" in connection with a U.S. commercial activity); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 440 (D.C. Cir. 1990) ("Under [the] FSIA, agencies and instrumentalities of a foreign nation are presumed to be separate from each other and from the foreign state.").

The Second and Ninth Circuits each rejected Bank Melli's claim of immunity, reasoning that Section 201(a) "clearly differentiates between the party that is the subject of the underlying judgment itself, which can be any terrorist party (here, Iran), and parties whose blocked assets are subject to execution or attachment, which can include not only the terrorist party but also 'any agency or instrumentality of that terrorist party.'" *Weinstein*, 609 F.3d at 49 (quoting 28 U.S.C. § 1610 note); *see Bennett*, 825 F.3d at 958. The Second Circuit reasoned that one purpose of Section 201(a) was to eliminate "any juridical distinction between a terrorist state and its agencies or instrumentalities"—to erase the distinct execution immunity ordinarily enjoyed by agencies and instrumentalities—when it comes to "enforcing a judgment against a terrorist state['s]" blocked assets. *Weinstein*, 609 F.3d at 50 (quoting 148 Cong. Rec. S11528). Critically, in both *Weinstein* and *Bennett*, the plaintiffs had already overcome Iran's jurisdictional immunity through the FSIA's state-sponsor-of-terrorism exception and had obtained a valid judgment against it. *Bennett*, 825 F.3d at 957; *see Weinstein*, 609 F.3d at 46–47.

That predicate loss of immunity by the World Bank and the Fund is exactly what is missing in this case. The John Does did not obtain jurisdiction over the World Bank or Fund in obtaining their damages judgment against the Taliban, Al-Qaeda, and the Haqqani Network. And neither the World Bank nor the Fund is even arguably an agent or instrumentality of the Taliban.

To that point, the Second Circuit has held that "[S]ection 201(a) provides for federal court jurisdiction over execution and attachment proceedings involving the assets of a foreign sovereign * * * *only* where 'a valid judgment has been entered' against the sovereign" itself. *Vera v. Banco Bilbau Vizcaya*

*Argentaria*, 946 F.3d 120, 133 (2d Cir. 2019) (formatting modified) (quoting *Vera v. Republic of Cuba*, 867 F.3d 310, 321 (2d Cir. 2017)).

**2**

Lastly, the John Does argue that the World Bank's and Fund's refusals to answer interrogatories submitted to them before they appeared in the case entitled the John Does to judgment as a matter of law, or at least to an order requiring that the answers be provided. *See* John Does Br. 13–14, 32–35.

That is not so. To the extent the John Does argue that the district court could have entered judgment or required the World Bank and Fund to answer interrogatories *without* first determining its jurisdiction over them, that argument plainly fails. *See, e.g.*, *Nyambal*, 772 F.3d at 280–281 ("[I]mmunity, where justly invoked, shields defendants not only from the consequences of litigation's results but also from the burden of defending [against it].") (quoting *Tuck v. Pan American Health Org.*, 668 F.2d 547, 549 (D.C. Cir. 1987)); *see also* 22 U.S.C. § 288a(b) (vesting international organizations with "the same immunity from suit *and every form of judicial process*" as foreign states) (emphasis added).

The John Does' argument that the District of Columbia's garnishment procedures required the World Bank and Fund to assert an immunity defense within ten days or else waive it fares no better. *See* Opening Br. 32–33. For one thing, federal law affords the World Bank and Fund immunity. 22 U.S.C. § 288a(b); 28 U.S.C. § 1604. District garnishment procedures cannot strip that federal-law protection. *See Nyambal*, 772 F.3d at 187.

For another thing, the World Bank and Fund asserted immunity in their first substantive filings in the district court on the schedule set by that court. *John Does 1 Through 7*, 2022 WL 4103853, at \*1. The John Does cite no authority finding waivers of jurisdictional immunity based solely on the plaintiffs' schedule for filing interrogatories, nor would our precedent allow such a conclusion. *See Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*, 264 F. App'x 13, 15 (D.C. Cir. 2008) (finding no waiver of jurisdictional immunity by the World Bank where it "assert[ed] it in a letter to [the other party] rather than in a formal motion to the court"); *cf. Delta Foods Inc. v. Republic of Ghana*, 265 F.3d 1068, 1069–1071 (D.C. Cir. 2001) (finding that Ghana waived jurisdictional immunity after it fully participated in district court litigation without raising immunity, subsequently lost, filed an appeal without raising jurisdictional immunity, and then finally raised the argument for the first time in a motion for relief from judgment); *id.* at 1071 (noting that "Ghana arguably could have asserted sovereign immunity for the first time in the court of appeals because the objection goes to the subject matter jurisdiction of the court").

Were all that not enough, the John Does' argument overreads the relevant provisions of the D.C. Code. Certainly District law specifies that garnishees should respond to interrogatories within ten days of proper service. D.C. CODE § 16-521(a). But the Code then specifies that a garnishee who fails to do so may "appear [in court] and show cause why a judgment of condemnation should not be entered." *Id.* § 16-526(b). Here, the World Bank and Fund explained to the district court why no such judgment should be entered: The

district court lacked jurisdiction to enter it. District law required nothing more. [6]

## V

While the TRIA provides a powerful tool for plaintiffs seeking to satisfy judgments based on acts of terrorism, that tool applies only to foreign states and international organizations once jurisdiction has been established over them. Because the TRIA leaves the World Bank's and Fund's jurisdictional immunity intact, the district court could not entertain the John Does' garnishment action. We accordingly affirm the district court's order quashing the John Does' writs of execution and dismissing the attachment proceeding.[7]

*So ordered.*

---

[6] Serious doubt that the interrogatories were properly served on the World Bank and Fund—they were left at the feet of security guards at the entities' respective offices—further undermines any suggestion that a strict ten-day clock began to run upon the interrogatories' unorthodox deposit. *See* 28 U.S.C. § 1608 (FSIA's service requirements); D.C. Super. Ct. Civ. R. 4 (same for D.C.). While only the Fund raises a service argument on appeal, we need not decide that question in light of our holding that the World Bank and Fund have jurisdictional immunity.

[7] Because the TRIA provides no basis for abrogating the World Bank's and Fund's jurisdictional immunity under the IOIA and FSIA, we need not address the World Bank's and Fund's other arguments, such as whether (i) the John Does met the requirements of the TRIA, (ii) the President's recognition powers preclude a judicial determination that the Taliban controls the Afghan government or its central bank, and (iii) the Fund was properly served and the additional immunities in the Fund's Articles were overcome. *See* World Bank Br. 34–53; Fund Br. 40–53.